32544141v1

LEASE AGREEMENT

Dated as of _____ __, 2021

By and Between

GREAT EMPIRE REALTY LLC
a New York company

AS LANDLORD,

AND

DOWN TOWN ASSOCIATION,
a New York corporation

AS TENANT

## LEASE AGREEMENT

THIS LEASE (this "Lease") is entered into as of this ___ day of _____, 2021, by and between GREAT EMPIRE REALTY LLC a New York Company, as landlord ("Landlord"), and DOWN TOWN ASSOCIATION, a New York corporation, as tenant ("Tenant").

### WITNESSETH:

WHEREAS, Tenant and Landlord were parties to that certain Carry Lease dated as of August 6, 2018, the date pursuant to which Tenant leased the entire Property pursuant to the terms contained in the Carry Lease, the term of which Carry Lease has expired; and

WHEREAS, the Tenant vacated the premises on July 2, 2020, and subsequently filed the Chapter 11 case; and

WHEREAS, the Tenant owes the Landlord rent and additional rent in the sum of $_____, for which a Claim has been filed in the Chapter 11 case, as well as sums due under the Line of Credit in the sum of $6,060,297.00; and

WHEREAS, The Landlord has filed claims for those amounts which shall be addressed in the Plan; and

WHEREAS, Landlord has agreed to lease to Tenant and Tenant has agreed to lease from Landlord the Demised Premises as more particularly described in Section 2.1 and on Exhibit A attached hereto, subject to and upon the terms and conditions herein set forth;

NOW THEREFORE, for good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

### 1.
### DEFINITIONS

For all purposes of this Lease, except as otherwise expressly provided or unless the context otherwise requires, (i) the terms defined in this Article 1 shall have the meanings assigned to them in this Article and include the plural as well as the singular, (ii) all accounting terms not otherwise defined herein shall have the meanings assigned to them in accordance with GAAP, (iii) all references in this Lease to designated "Articles," "Sections" and other subdivisions are to the designated Articles, Sections and other subdivisions of this Lease, and (iv) the words "herein," "hereof," "hereunder" and other words of similar import refer to this Lease as a whole and not to any particular Article, Section or other subdivision.

"Additional Charges" shall have the meaning given such term in Section 3.1.2.

"Alterations" shall have the meaning given such term in Section 6.2.

"Anti-Terrorism Laws" shall mean any laws, statutes and regulations relating to terrorism or money laundering, including Executive Order No. 13224 (effective September 24, 2001), the

1

Patriot Act, the laws, statutes and regulations comprising or implementing the Bank Secrecy Act, and the laws, statutes and regulations administered by OFAC.

"<u>Bankruptcy Code</u>" shall have the meaning given such term in Section 20.2(b).

"<u>Basic Rent</u>" shall mean an initial amount equal to the minimum guaranteed rent set forth in the Rent Schedule annexed hereto under Schedule II, which minimum guaranteed rent shall be derived from the minimum guaranteed annual revenue of the Tenant's choice of club operator  and the dues of the members of Tenant net of amounts used from dues to pay the cost of operations as determined in Section 4.4 and any insurance and other costs paid directly by tenant, which amount shall be increases as provided herein and during any option terms.

"<u>Blocked Person</u>" shall mean any Person: (a) listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224, (b) a Person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224, (c) a Person with which Fee Mortgagee is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law, (d) a Person that commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order No. 13224, or (e) a Person that is named a "specially designated national" or "blocked person" on the most current list published by OFAC or other similar list.

"<u>Building Systems</u>" shall mean the life safety, electrical, water, plumbing, sewer, utility lines and conduits, HVAC or other building systems servicing the improvements located on the Property.

"<u>Business Day</u>" shall mean any day other than Saturday, Sunday, or any other day on which banking institutions in the State and City of New York are authorized by law or executive action to close.

"<u>Capital Additions</u>" shall mean the proposed renovation and capital improvements of the Property by Landlord as more particularly set forth on Exhibit C attached hereto.

"<u>Carry Lease</u>" shall mean the predecessor lease dated August 6, 2018 between Landlord and Tenant which terminated and expired prior to the effective date of this Lease, a copy of which is attached as Exhibit B.

"<u>Casualty</u>" shall mean any damage to or destruction of the improvements located on the Property or which affects the Property or which arises from any loss of or related to the Property from whatever cause.

"<u>Casualty Proceeds</u>" shall mean the amount of any insurance proceeds or other monies, including, without limitation, funds from the Federal Emergency Management Agency or any other Governmental Agency for any loss, damage or casualty.

" <u>Chapter 11 Case</u>" shall mean the  bankruptcy case file by the Tenant under Chapter 11 Subchapter V, Title 11, United States Code (the "Bankruptcy Code") on March 4, 2021.

"<u>Code</u>" shall have the meaning given such term in Section 21.11.

2

"Commencement Date" shall mean the date that the Tenant is able to reoccupy the Property.

"Condemnation" shall mean (a) the exercise of any governmental power with respect to the Property, whether by legal proceedings or otherwise, by a Condemnor of its power of condemnation, (b) a voluntary sale or transfer of the Property by Landlord to any Condemnor, either under threat of condemnation or while legal proceedings for condemnation are pending, or (c) a taking or voluntary conveyance of all or part of the Property, or any interest therein, or right accruing thereto or use thereof, as the result or in settlement of any condemnation or other eminent domain proceeding affecting such Property, whether or not the same shall have actually been commenced.

"Condemnation Notice" shall have the meaning given to such term in Section 11.1.

"Condemnor" shall mean any public or quasi-public Person, having the power of Condemnation.

"Confidentiality Agreement" shall have the meaning given to such term in Section 17.2.

"Consumer Price Index" shall mean the Consumer Price Index for All Urban Consumers for the New York City Metropolitan Area issued by the United States Department of Labor, Bureau of Labor Statistics; provided, however, that if said Consumer Price Index shall cease to exist, or be changed, thereafter "Consumer Price Index" shall mean such other or similar index or formula as Landlord reasonably selects to measure change in the purchasing power of the U.S. Dollar.

"Costs" of a Person or associated with a specified transaction shall mean all reasonable costs and expenses incurred by such Person or associated with such transaction, including without limitation, reasonable attorneys' fees and expenses, court costs, brokerage fees, escrow fees, title insurance premiums, mortgage commitment fees, mortgage points, recording fees and transfer taxes, as the circumstances require.

"Determination Date" shall have the meaning given such term in Section 3.1(f)(i).

"Environment" shall mean any surface or subsurface physical medium or natural resource, including air, land, soil, surface water, ground water, stream and river sediments, biota and any indoor area, surface or physical medium.

"Environmental Laws" shall mean all federal, State, county, municipal, and local statutes, laws, including the common law, rules, regulations, orders, ordinances, codes, judgments, decrees, injunctions, licenses, and permits relating to injury to, or the pollution or protection of human health and safety or the Environment.

"Event of Default" shall have the meaning given such term in Section 12.1.

"Expiration Date" shall have the meaning given such term in Section 2.4.

"Fair Market Rent" shall have the meaning given such term in Article 22.

"Full Replacement Cost" shall mean the actual replacement cost of the Property's improvements (including fixtures and Building Systems) from time to time (without taking into account any depreciation and exclusive of excavations, footings and foundation, landscaping and paving) as determined annually by an insurer, a recognized independent insurance agent or broker or an independent appraiser selected and paid by Tenant.

"GAAP" shall mean generally accepted accounting principles, as adopted in the United States of America, consistently applied.

"Government Agencies" shall mean any court, agency, authority, board (including, without limitation, environmental protection, planning and zoning) bureau, commission, department, office or instrumentality of any nature whatsoever of any governmental or quasi-governmental unit of the United States, or of the State, or of any municipality, county or political subdivision of any of the foregoing, whether now or hereafter in existence, having jurisdiction over Tenant or the Property or any portion thereof or the operation thereon.

"Hazardous Substances" shall mean any substance, material or waste defined in or regulated under any Environmental Law, or included in the definition of "hazardous substances", "extremely hazardous substances", "pollutants," "contaminants" or any similar denomination intended to classify or regulate a substance, material or waste by reason of its toxicity, carcinogenicity, ignitability, corrosivity or reactivity, including, without limitation, petroleum, petroleum products, petroleum-derived substances, radioactive materials, asbestos, polychlorinated biphenyls (PCBs),  urea formaldehyde, and any mold, microbial growth or other fungal growth that poses a material risk to human health or the Environment.

"Impositions" shall mean: (i) all taxes (including, without limitation, those described in (iii) below), assessments (including, without limitation, all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not commenced or completed within the term of this Lease), excises, levies, fees (including, without limitation, license, permit, inspection, authorization and similar fees), water and sewer rents and charges and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, and any interest and penalties thereon which are, at any time prior to or during the Term, imposed or levied upon or assessed against or which arise with respect to (A) the Property, (B) any Basic Rent, Additional Charges or other sums payable hereunder, (C) this Lease or the leasehold estate hereby created or (D) the operation, possession or use of the Property; (ii) all gross receipts or similar taxes (i.e., taxes based upon gross income which fail to take into account deductions with respect to depreciation, interest, taxes or ordinary and necessary business expenses, in each case relating to the Property) imposed or levied upon, assessed against or measured by any Basic Rent, Additional Charges or other sums payable hereunder; and (iii) all sales (including those imposed on lease rentals), value added, ad valorem, single business, gross receipts, use and similar taxes at any time levied, assessed or payable on account of the acquisition, ownership, leasing, operation, possession or use of the Property.  Tenant shall not be required to pay any franchise, estate, inheritance, transfer, net income or similar tax of Landlord (other than any tax referred to in clause (ii) above) unless such tax is imposed, levied or assessed in substitution for any other tax, assessment, charge or levy which Tenant is required to pay; provided, however, that if at any time during the Term, the method of taxation shall be such that there shall be assessed, levied, charged or imposed on Landlord a capital levy or other tax directly on the rents received

4

therefrom, or upon the value of the Property or any present or any future improvement or improvements on the Property, then all such levies and taxes or the part thereof so measured or based shall be payable by Tenant, but only to the extent that such levies or taxes would be payable if the Property were the only property of Landlord, and Tenant shall pay and discharge the same as herein provided; and <u>provided</u>, <u>further</u>, that nothing herein contained shall require Tenant to pay, and the term "Impositions" shall not include, Landlord Taxes.  For purposes of clarification, "Impositions" shall include any rent tax or sales tax imposed in the State on owners of real property collecting rent from tenants of real properties.

"<u>Improvements</u>" shall have the meaning given such term in Section 2.1(c).

"<u>Indemnitee</u>" has the meaning assigned to such term in Section 4.3.2.

"<u>Insurance Requirements</u>" shall mean all terms of any insurance policy required by this Lease and all requirements of the issuer of any such policy and all orders, rules and regulations and any other requirements of the National Board of Fire Underwriters (or any other body exercising similar functions) binding upon Landlord, Tenant or the Property.

"<u>Interest Rate</u>" shall mean, as of a calculation date, the rate of interest announced by Wall Street Journal from time to time as its "prime rate" as in effect on calculation date, with any change in Interest Rate resulting from a change in said prime rate to be effective as of the date of the relevant change in such prime rate (it being acknowledged that such rate may not be Bank of America's best or lowest rate), or, if Wall Street Journal shall no longer announce such rate, a substitute "prime rate" selected by Landlord that is reasonably equivalent.

"<u>Invested Capital</u>" shall mean the Purchase Price plus the construction and renovation costs of the Capital Additions.

"<u>IRR Test</u>" shall mean a minimum 8% internal rate of return on Invested Capital.

"<u>Land</u>" shall have the meaning given such term in Section 2.1(a).

"<u>Landlord</u>" shall have the meaning given such term in the preambles to this Lease and shall also include its permitted successors and assigns.

"<u>Landlord Taxes</u>" shall mean:  (i) any tax based on net income (i.e., after deduction for depreciation) imposed on Landlord or its shareholder, (ii) withholding taxes imposed on Landlord or on Tenant for amounts otherwise payable by Landlord hereunder, (iii) any estate or inheritance tax imposed on Landlord or the principals of Landlord, (iv) any transfer fee or other tax imposed with respect to the sale, exchange or other disposition by Landlord of the Property or the proceeds thereof to a person other than Tenant including such taxes triggered by a transfer of any interest in Landlord, (v) any franchise, capital stock or similar taxes as the same relate to or are imposed upon Landlord or its shareholder, (vi) any interest or penalties imposed on Landlord as a result of the failure of Landlord to file any return or report timely and in the form prescribed by law or to pay any tax or imposition, except to the extent such failure is a result of a breach by Tenant of its obligations pursuant to Section 3.1.3, (vii) any impositions that are enacted or adopted by their express terms as a substitute for any tax that would not have been payable by Tenant pursuant to the terms of this Lease or (viii) any impositions imposed as a result of a breach of covenant or

representation by Landlord in any agreement governing Landlord's conduct or operation or as a result of the gross negligence or willful misconduct of Landlord.

"Lease" shall mean this Lease Agreement, including the Exhibits attached hereto, as it and they may be amended from time to time as herein provided.

"Legal Requirements" shall mean all statutes, laws, rules, orders, regulations, guidelines, ordinances, principles of common law, judgments, decrees, injunctions and other restrictions or requirements of any Government Agencies applicable to Tenant, the Property or the use and occupancy of the Property, whether now or hereafter enacted and in force, including, *inter alia*, (i) building codes and zoning regulations, (ii) restrictions or requirements relating to required repairs, modifications or other Alterations, and (iii) building codes and zoning restrictions or requirements relating to the use of Property.

"Monetary Obligations" shall mean all sums payable by Tenant under this Lease to Landlord (or any other Person) other than Basic Rent or Additional Charges.

"Net Award" shall mean the entire award payable to Landlord or Fee Mortgagee by reason of a Condemnation whether pursuant to a judgment or by agreement or otherwise, and which shall include, *inter alia*, any portion of an award attributed to the leasehold estate under this Lease, all of which has been assigned to Landlord in accordance with Section 11.1, less any expenses incurred by Landlord and Fee Mortgagee in collecting such award.

"Non-Disturbance Agreement" shall have the meaning given such term in Section 18.2.

"Notice" shall mean a notice given in accordance with Section 21.5.

"OFAC" shall mean the U.S. Department of Treasury Office of Foreign Assets Control.

"OFAC List" shall mean, collectively, the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to Executive Order No. 13224, 66 Fed. Reg. 49079 (September 25, 2001) and/or any other list of terrorists or other restricted Persons maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Executive Orders.

"On-Going Financials" shall have the meaning given such term in Section 17.2.

"Plan" shall mean the Plan of Reorganization to be filed in the Chapter 11 Case.

"Permitted Encumbrances" shall mean all rights, restrictions, and easements of record set forth on Part 2 of Schedule B to the applicable owner's insurance policy issued to Landlord with respect to the applicable Property, plus any other encumbrances as may have been consented to in writing by Landlord and Tenant from time to time.

"Permitted Use" shall mean, with respect to the Demised Premises, any use of such Demised Premises permitted pursuant to Section 4.1.1.

"Person" shall mean any individual, corporation, general or limited partnership, limited liability company or partnership, stock company or association, joint venture, association, company, trust, bank, trust company, land trust, business trust, cooperative, any government or agency, authority or political subdivision thereof or any other entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person where the context so admits.

"Property" shall have the meaning given such term in Section 2.1.

"Property Loss Insurance Proceeds" shall mean the entire proceeds of any insurance maintained in accordance with Sections 9.1(a), 9.1(b), 9.1(i), 9.1(j), 9.1(k), 9.1(l) and 9.1(m)(ii), less any expenses incurred by Landlord or Fee Mortgagee in collecting such proceeds.

"Proportionate Share" shall mean a fraction (i) the numerator of which is the rentable square footage of the Demised Premises, and (ii) the denominator of which is the rentable square footage of the entire Building as altered and expanded by Landlord's Capital Additions.

"Rent" shall mean, collectively, the Basic Rent, Additional Charges and Monetary Obligations.

"Rent Payment Date" shall mean the first day of each calendar month between the Commencement Date and the Expiration Date.

"Repairs" shall have the meaning given such term in Section 5.1.1.

"Restoration Plans and Specifications" shall have the meaning given such term in Section 10.2.1.

"State" shall mean the State of New York.

"Successor Landlord" shall have the meaning given such term in Section 18.2.

"Tenant" shall have the meaning given such term in the preambles to this Lease and shall also include its permitted successors and assigns.

"Tenant's Personal Property" shall mean works of art, and consumable inventory and supplies, furniture, furnishings, movable walls and partitions, equipment and machinery and all other personal property of Tenant on the Commencement Date, or personal property which is acquired by Tenant after the Commencement Date.

"Term" shall have the meaning given such term in Section 2.4.

"Treasury Rate" shall have the meaning given such term in Section 12.2(f).

"Unsuitable for Permitted Use" shall mean a state or condition of the Demised Premises and/or the Improvements such that, as the result of a partial taking by Condemnation, the Demised Premises or the Improvements cannot be operated on a commercially practicable basis in light of then existing circumstances.

"Work" shall have the meaning given such term in Section 10.2.1.

## 2.
## PROPERTY, DEMISED PREMISES AND TERM

(i) Demised Premises.  Upon and subject to the terms and conditions hereinafter set forth, Landlord leases to Tenant and Tenant leases from Landlord all of Landlord's right, title and interest in and to all of the following (collectively, the "Demised Premises"):

(a)     The entirety of the second (2nd) and third (3rd) floors (excepting certain common and mechanical areas) and a portion of the fourth (4th) floor, all as more particularly described on Exhibit A attached hereto of the building (the "Building") located on that certain plot, piece and parcel of land located in The City of New York, County of New York and State of New York (the "Land", and together with the Building and all improvements located on the Land, and all easements, rights of way, privileges, servitudes and appurtenances running with the land, the "Property"), as such Land is described on Exhibit A-1 attached hereto and made a part hereof; and

(b)     A portion of the ground floor and the basement of the Building consisting of approximately _____ square feet, as more particularly described in Exhibit A attached hereto and made a part hereof; and

(c)     Any other improvements or parts of the Building (any part (or percentage) thereof) required or deemed necessary by Tenant in connection with Tenant's operations in and to the Demised Premises (all improvements now or hereafter located in or on, or servicing, the Demised Premises shall hereinafter be the "Improvements").

(ii) Condition of Demised Premises. Subject to the terms of this Lease, Tenant, as prior owner, is fully familiar with the Demised Premises, and Tenant acknowledges receipt and delivery of possession of the Demised Premises and Tenant accepts same (and the title thereto) in its "AS IS" and "WHERE IS" condition, subject to the existing state of title, including all covenants, conditions, restrictions, reservations, easements and other matters of record or that are visible or apparent on the Demised Premises, all Legal Requirements, Permitted Encumbrances and such other matters which would be disclosed by an inspection of the Demised Premises and the record title thereto or by an accurate survey thereof.  Tenant has not relied on any representation or warranty by Landlord and hereby waives any claim or action against Landlord in respect of the condition of the Demised Premises.   LANDLORD MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, IN RESPECT OF THE DEMISED PREMISES OR ANY PART THEREOF, EITHER AS TO ITS FITNESS FOR USE, SUITABILITY, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE OR OTHERWISE, AS TO QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, IT BEING AGREED THAT ALL SUCH RISKS ARE TO BE BORNE BY TENANT.  TENANT ACKNOWLEDGES THAT TENANT IS FULLY FAMILIAR WITH THE CONDITION OF THE DEMISED PREMISES AND HAS BEEN PROVIDED WITH SUCH INSPECTION RIGHTS AS TENANT HAS DEEMED NECESSARY, AND THE DEMISED PREMISES IS IN A STATE AND CONDITION IN ALL RESPECTS SATISFACTORY TO TENANT. TENANT HEREBY ACKNOWLEDGES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN,

LANDLORD HAS NOT MADE AND WILL NOT MAKE, NOR SHALL LANDLORD BE
DEEMED TO HAVE MADE ANY WARRANTY OR REPRESENTATION, IMPLIED OR
OTHERWISE, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES THAT THE
DEMISED PREMISES IS FREE FROM DEFECTS AND DEFICIENCIES, WHETHER
LATENT OR APPARENT, OR ANY WARRANTY AS TO THE FITNESS, DESIGN OR
CONDITION OF THE DEMISED PREMISES FOR ANY PARTICULAR USE OR PURPOSE
OF SUCH DEMISED PREMISES. THE PROVISIONS OF THIS SECTION 2.2 HAVE BEEN
NEGOTIATED, AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND
NEGATION OF ANY WARRANTIES BY LANDLORD CREATED OR IMPLIED BY LEGAL
REQUIREMENTS WITH RESPECT TO THE CONDITION OF THE DEMISED PREMISES.

(iii)  Term. Subject to the provisions hereof, Tenant shall have and hold the Demised Premises for
a term (the "Term") commencing on the Commencement Date and ending five years later, unless
Tenant should choose to extend as set forth herein (the "Expiration Date").

(iv) Extension Options. As long as Tenant is in compliance with the Operating Agreement, Tenant
shall have the right to extend the Term for one additional Term of five (5) years from the
Expiration Date (hereinafter the "Extension Period"). Tenant shall notify Landlord Three Hundred
and Sixty Five (365) days in advance of its intent to extend the Term hereof and upon such notice,
the Term shall be deemed so extended.

3.
RENT

(i)  Basic Rent; Additional Charges.  Tenant shall pay, without offset, abatement, demand or
deduction (unless otherwise expressly provided in this Lease), Basic Rent in advance to Landlord
on each Rent Payment Date, and Additional Charges to the party to whom such Additional Charges
are payable; provided, however, that the Basic Rent and Additional Charges shall abate for any
square footage of the Demised Premises materially affected by, or that Tenant is prevented from
utilizing during, Landlord's Capital Additions. The Basic Rent shall be as set forth in the Rent
Schedule set forth herein as Schedule II annexed hereto and made a part hereof. The Basic Rent
shall be paid in equal monthly installments and shall be paid on the 1st day of each month starting
on the Commencement Date and on 1st day of each subsequent month.

        3.1.1.Beginning on the first day of the month after the three year
anniversary of the Commencement Date, the Basic Rent shall be recalculated to equal the sum
of (i) the Basic Rent, plus (ii) the product obtained by multiplying (a) the Basic Rent by (b) a
fraction (x) the numerator of which is difference between the Consumer Price Index for the
last month of the immediately preceding lease year, less the Base Index (as hereinafter
defined), and (y) the denominator of which is the Base Index. The "Base Index" shall mean
the Consumer Price Index during the month and year in which the Commencement Date (or
such Fair Market Rent Recalculation Date, as the case may be) occurs.

        3.1.2.Beginning on the first day of the month (x) after the six year
anniversary of the Commencement Date, and (y) on the first day of the month of any
Extension Option Commencement Date, (each a "Fair Market Rent Recalculation Date"), the
Basic Rent will be recalculated to an amount equal to the greater of (i) the Basic Rent due for

the immediately preceding twelve (12) month period, and (ii) the Fair Market Rent calculated pursuant to the provisions of this Lease. Tenant will receive a Fair Market Tenant Improvement Allowance and Fair Market Rent Abatement.

3.1.3. Beginning on the first day of the month after the nine year anniversary of the Commencement Date and thereafter on each three year anniversary of such date, the Basic Rent as determined in Section 3.1.2 shall be recalculated to equal the sum of (i) the Basic Rent, plus (ii) the product obtained by multiplying (a) the Basic Rent by (b) a fraction (x) the numerator of which is difference between the Consumer Price Index for the last month of the immediately preceding lease year, less the Base Index and (y) the denominator of which is the Base Index.

3.1.4. Beginning on the first day of the month after the three year anniversary of the Extension Option Commencement Date and thereafter on each three year anniversary of such date through the date of the commencement of the next Extension Term, the Basic Rent as determined in Section 3.1.2 shall be recalculated to equal the sum of (i) the Basic Rent, plus (ii) the product obtained by multiplying (a) the Basic Rent by (b) a fraction (x) the numerator of which is difference between the Consumer Price Index for the last month of the immediately preceding lease year, less the Base Index, and (y) the denominator of which is the Base Index divided by three.

3.1.5. Rent Abatement:  Notwithstanding anything contained herein to the contrary, Basic Rent and all Additional Charges shall abate for any square footage materially affected by, or that Tenant is prevented from utilizing during, Landlord's Capital Additions

3.1.6. Additional Charges.  In addition to the Basic Rent payable hereunder, Tenant shall reimburse Landlord for Tenant's Proportionate Share of Impositions and insurance (collectively, "Additional Charges"):

(a)    Impositions.  Subject to Article 8 relating to permitted contests, Landlord shall pay, or cause to be paid, all Impositions before any fine, penalty, interest or cost may be added for non-payment, such payments to be made directly to the taxing authorities (or other payees) where feasible, and shall furnish to Tenant copies of official receipts or other reasonably satisfactory proof evidencing such payments in accordance with Section 3.1.10(a)(iv) below.  If any such Imposition may, at the option of the taxpayer, lawfully be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Landlord may exercise the option to pay the same (and any accrued interest on the unpaid balance of such Imposition) in installments and, in such event, shall pay such installments during the Term as the same become due and before any fine, penalty, premium, interest or late payment fee may be added thereto.  Without limiting the generality of the foregoing:

(i)    In the event Government Agencies classify the Demised Premises, or any portion thereof covered by this Lease, as personal property, Tenant shall file all personal property tax returns in such jurisdictions where it may legally so file. Each party shall, to the extent it possesses the same, provide the other, upon request,

with cost and depreciation records necessary for filing returns for the Demised Premises so classified as personal property.  Where Landlord is legally required to file personal property tax returns for property covered by this Lease, Landlord shall provide Tenant with copies of assessment notices in sufficient time for Tenant to file a protest.

(ii)    All Impositions assessed against Tenant's personal property shall be (irrespective of whether Landlord or Tenant shall file the relevant return) paid by Tenant not later than ten (10) days prior to the last date on which the same may be made without interest or penalty, subject to the provisions of Article 8.

(iii)    Landlord and Tenant shall, upon the other's request, consult with each other in order to avoid (to the extent permitted by Legal Requirements) the imposition of withholding taxes upon either party, the Property or otherwise concerning the operation thereof.

(iv)    Landlord will furnish to Tenant, within twenty (20) days after the due date thereof, proof of payment of all Impositions.

Landlord shall give prompt Notice to Tenant of Tenant's Proportionate Share of Impositions payable by Tenant hereunder.  Tenant shall pay to Landlord prior to the later of (i) thirty (30) days after receipt from Landlord of a statement setting forth Tenant's Proportionate Share of Impositions, and (ii) fifteen (15) days prior to the date such Impositions can be paid without penalty to the taxing authority.

(b)    Utility Charges.    There are two alternate Rent Schedules attached to the Lease Agreement which sets forth the minimum guaranteed rent to be paid by the Tenant, one which provides that the Landlord pays the utilities and one which provides that the Tenant pays the utilities. Based upon the which final minimum guaranteed rent to be selected by the Landlord, the party designated in that Rent Schedule so selected shall pay or cause to be paid all charges for electricity, power, gas, oil, water, sewer and other utilities used in connection with the Demised Premises on or prior to the due date thereof. [TO BE REVISED IF UTILITIES NOT SEPARATELY METERED]

(c)    Insurance Premiums.  Landlord shall pay or cause to be paid all premiums for the insurance coverage required to be maintained by Landlord pursuant to Article 9 at least five (5) days prior to the due dates thereof.  Landlord shall provide Tenant with evidence of the renewal of all such insurance at least five (5) days prior to the expiration thereof.  Tenant shall reimburse Landlord for Tenant's Proportionate Share of insurance premiums actually paid by Landlord with respect to the insurance coverage required to be maintained by Landlord pursuant to Article 9 hereof.  Landlord shall give prompt Notice to Tenant of Tenant's Proportionate Share of insurance premiums payable by Tenant hereunder.  Tenant shall pay to Landlord prior to the later of (i) thirty (30) days after receipt from Landlord of a statement setting forth Tenant's Proportionate Share of Impositions, and (ii) fifteen (15) days prior to the date such Impositions can be paid without penalty to the taxing authority.

(d)    Reimbursement for Additional Charges.  In the event Landlord fails to pay Impositions or insurance premiums, or maintain insurance coverage as required hereunder, Tenant may pay such premiums and/or obtain such insurance coverage hereunder, and such payments by Tenant shall accrue interest at the Interest Rate until paid by Landlord or offset as hereinafter provided.  If Tenant pays or causes to be paid Impositions, insurance premiums or similar or other Additional Charges, Landlord shall upon demand reimburse Tenant for such amounts, and if landlord fails to so reimburse Tenant, Tenant may offset against the next payment of Basic Rent or Additional Charges due hereunder.  Landlord shall also promptly reimburse Tenant for all payments of such Impositions, insurance and other similar Additional Charges that are attributable to any period after the Term of this Lease.

3.1.7. Cooperation.  Landlord and Tenant agree, upon request of the other, to use commercially reasonable efforts to obtain any certificate or other document from any Governmental Agency as may be necessary to mitigate, reduce or eliminate any Imposition that could be imposed.

3.1.8. Late Payment of Rent, Etc.  If any installment of Basic Rent shall not be paid within five (5) days after its due date or if any Additional Charges or Monetary Obligations (but only as to those Additional Charges and Monetary Obligations which are payable directly to Landlord) shall not be paid within ten (10) days after its due date, Tenant shall pay Landlord, on demand a late charge (to the extent permitted by law) computed at the Interest Rate on the amount of such installment, from such  5th day, for Basic Rent, or 10th day, for Additional Charges and Monetary Obligations, to the date of payment thereof. In the event of any failure by Tenant to pay any Additional Charges or Monetary Obligations when due, Tenant shall promptly pay and discharge, as a Monetary Obligation, every fine, penalty, interest and cost which is added for non-payment or late payment of such items.  Additional Charges and Monetary Obligations shall constitute additional rent under this Lease and Landlord shall have all legal, equitable and contractual rights, powers and remedies provided either in this Lease or by statute or otherwise in the case of non-payment of the Additional Charges or Monetary Obligations as in the case of non-payment of the Basic Rent.  However, if during the term of this lease dues from members of tenant are paid directly to Landlord or Landlord's Agent as part of Basic Rent then no late charges are due under this section except to the extent that late charges are collected from members of tenant.

(ii) No Termination, Abatement, Etc.  Except as otherwise specifically provided in this Lease, Landlord and Tenant, to the maximum extent permitted by law, shall remain bound by this Lease in accordance with its terms and shall not take any action without the consent of the other to modify, surrender or terminate this Lease.  In addition, except as otherwise expressly provided in this Lease, Tenant shall not seek, or be entitled to, any abatement, deduction, deferment or reduction of the Rent, or set off against the Rent, nor shall the obligations of Tenant be otherwise affected by reason of: (a) any damage to or destruction of the Demised Premises or any portion thereof from whatever cause or any Condemnation; (b) the lawful or unlawful prohibition of, or restriction upon, Tenant's use of the Demised Premises, or any portion thereof, or the interference with such use by any Person or by reason of eviction by paramount title; (c) any claim which Tenant may have against Landlord by reason of any default or breach of any warranty by Landlord under this Lease or any other agreement between Landlord and Tenant, or to which Landlord and

Tenant are parties; (d) any bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding up or other proceedings affecting Landlord or any assignee or transferee of Landlord; or (e) any other cause whether similar or dissimilar to any of the foregoing, except as otherwise specifically provided in this Lease.

(iii) Waiver.  Tenant hereby expressly waives all rights arising from any occurrence whatsoever, which may now or hereafter be conferred upon it by law (a) except as otherwise specifically provided in this Lease, to modify, surrender or terminate this Lease or quit or surrender the Demised Premises or any portion thereof, or (b) except as otherwise specifically provided in this Lease, which would entitle Tenant to any abatement, reduction, suspension or deferment of the Rent or other sums payable or other obligations to be performed by Tenant hereunder.  The obligations of Tenant hereunder shall be separate and independent covenants and agreements, and the Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events unless the obligations to pay the same shall be terminated pursuant to the express provisions of this Lease.

4.
USE OF THE DEMISED PREMISES

Permitted Use.

4.1.1.Permitted Use.  Tenant, and Landlord's Agent, may use the Demised Premises solely as a membership club and for private dining events or for any other lawful use; provided, however, that no use shall be made or permitted to be made of the Demised Premises and no acts shall be done thereon which will cause the cancellation of any insurance policy covering such Demised Premises or any part thereof (unless another adequate policy is available), nor shall Tenant, or Landlord's Agent, sell or otherwise provide or permit to be kept, used or sold in or about the Demised Premises any article which may be prohibited by law or by the standard form of fire insurance policies, or any other insurance policies required to be carried hereunder, or fire underwriter's regulations, nor shall any use of the Demised Premises violate any restrictive covenants applicable to the Demised Premises.  Tenant shall not commit or suffer to be committed any waste on the Demised Premises, nor shall Tenant cause or permit any unlawful nuisance thereon or therein.  Tenant, and Landlord's Agent, shall not suffer nor permit the Demised Premises, or any portion thereof, to be used in such a manner, which (i) adversely impairs Landlord's title thereto or to any portion thereof, or (ii) allows a claim or claims for adverse usage or adverse possession by any member of the public, as such, or of implied dedication of the Demised Premises or any portion thereof.

4.1.2.Necessary Approvals.  Tenant and Landlord's Agent as the case may be shall obtain and maintain all approvals necessary to use and operate, for its Permitted Use, the Demised Premises under all Legal Requirements and Permitted Encumbrances.

Compliance with Legal/Insurance Requirements, Etc..

4.1.3.Subject to the provisions of Article 8, Tenant, at its expense but as an offset to Basic Rent, shall (i) comply with all Legal Requirements, Insurance

13

Requirements and Permitted Encumbrances in respect of the use, operation, maintenance, repair, alteration and restoration of the Demised Premises, and (ii) procure, maintain and comply with all licenses, permits and other authorizations and agreements required for any use of the Demised Premises and Tenant's Personal Property and for the proper erection, installation, operation and maintenance of the Demised Premises or any part thereof. Such obligations of Tenant hereunder shall apply irrespective of the nature of action, capital improvement or other work required to be done, extraordinary as well as ordinary, whether or not the same involve or require any structural change or additions in or to the Demised Premises, and irrespective of whether or not such changes or additions be required on account of any particular use to which the Demised Premises, or any part thereof, may be put. Notwithstanding the foregoing, a violation of record against the Demised Premises shall not be a default hereunder provided Tenant has commenced and is diligently proceeding with taking steps to remove same of record.

4.1.4. Subject to the provisions of <u>Article 8</u>, Landlord, at its expense, shall (i) comply with all Legal Requirements, Insurance Requirements and Permitted Encumbrances in respect of the use, operation, maintenance, repair, alteration and restoration of the Property, and (ii) procure, maintain and comply with all licenses, permits and other authorizations and agreements required for any use of the Property and Landlord's personal property and for the proper erection, installation, operation and maintenance of the Property or any part thereof. Such obligations of Landlord hereunder shall apply irrespective of the nature of action, capital improvement or other work required to be done, extraordinary as well as ordinary, whether or not the same involve or require any structural change or additions in or to the Property, and irrespective of whether or not such changes or additions be required on account of any particular use to which the Property, or any part thereof, may be put.

Environmental Matters.

4.1.5. Restriction on Use, Etc. At all times during the Term, Tenant shall (a) not use, store, handle, manufacture, treat, process, generate, spill, emit, dump or dispose of any Hazardous Substance on, at, under or from the Demised Premises, except in compliance with all applicable Environmental Laws, and Tenant shall maintain the Demised Premises and any Hazardous Substance that are on or to be located thereon in compliance with all applicable Environmental Laws; (b) subject to the provisions of <u>Article 8</u>, at Tenant's cost and expense, observe and comply with all applicable Environmental Laws relating to the use, storage, management, handling, treatment, storage, and disposal of Hazardous Substances on, at, under, from or to the Demised Premises; (c) promptly undertake all actions necessary to investigate, remediate, abate, monitor or otherwise address any release or threatened release of Hazardous Substances on, at, under, from or to the Demised Premises in violation of applicable Environmental Law and otherwise bring the Demised Premises into compliance, in all material respects, with applicable Environmental Law; (d) promptly pay or otherwise settle or dispose of any fine, penalty, charge or Imposition related to the presence or release of Hazardous Substances or any violation or alleged violation of Environmental Law prior to or during the Term or by or on behalf of, or otherwise attributable or alleged to be attributed to Tenant or its agents or representatives; (e) promptly upon receipt of notice or knowledge thereof, notify the Landlord in writing and, if available, provide Landlord with copies of any material documentation relating to (i) any release or threatened release of

14

Hazardous Substances on, at, under, from or migrating to the Demised Premises in violation of applicable Environmental Law; (ii) any commenced or threatened claim, cause of action, suit, notice, demand, or other proceeding with respect to Hazardous Substances with respect to Tenant or the Demised Premises, and (iii) any citations, orders, notices or other governmental communications received by Tenant or its agents or representatives with respect to Hazardous Substances on, at, under, from or relating to the Demised Premises or violations or alleged violations of Environmental Law by Tenant or with respect to the Demised Premises.  Notwithstanding anything contained in this Lease to the contrary, Landlord shall be responsible for the remediation, removal and management of any asbestos or lead paint encountered or disturbed by Landlord's Capital Additions or any other alterations or renovations by or on behalf of Landlord to the Building or the Property.

4.1.6.<u>Indemnification of Landlord</u>.  Tenant shall protect, indemnify and hold harmless Landlord, its stockholders, directors, officers, agents, employees and beneficiaries, and Fee Mortgagee and any of their respective successors or assigns with respect to this Lease (collectively, the "<u>Indemnitees</u>" and, individually, an "<u>Indemnitee</u>") for, from and against any and all debts, liens, claims, obligations, liabilities, sanctions, losses, causes of action, administrative orders or notices, costs, fines, penalties or expenses (including, without limitation, remediation and clean-up costs, reasonable attorney's and technical consultant's fees and expenses) imposed upon, incurred by or asserted against any Indemnitee resulting from, either directly or indirectly, the presence of any Hazardous Substances in, upon, over, under, at or from the Demised Premises, prior to or during the Term, and prior to the expiration or sooner termination of the Term or the date Tenant vacates the Demised Premises, whichever is later (even if such claim may arise after the later of such dates); provided, however, this indemnity shall not cover and Tenant shall not indemnify Tenant with respect to, any asbestos or lead paint encountered or disturbed by Landlord's Capital Additions or any other alterations or renovations by or on behalf of Landlord to the Building or the Property.  Tenant's obligation hereunder includes, but is not limited to, costs arising from or relating to personal injury or property damage and natural resource damage claims arising from the presence or release of such Hazardous Substances.  Upon Notice from Landlord or any other of the Indemnitees, Tenant shall undertake the defense, at Tenant's sole cost and expense, of any indemnification duties set forth herein, in which event, Tenant shall not be liable for payment of any duplicative attorneys' fees incurred by any Indemnitee.  Tenant shall, upon demand, pay to Landlord, any cost, expense, loss or damage (including, without limitation, reasonable attorneys' fees) incurred by Landlord and arising from a failure of Tenant to fully observe and perform the requirements of this Section 4.3.

4.1.7.<u>Restriction on Use, Etc.</u>  At all times during the Term, Landlord shall (a) not use, store, handle, manufacture, treat, process, generate, spill, emit, dump or dispose of any Hazardous Substance on, at, under or from the Property, except in compliance with all applicable Environmental Laws, and Landlord shall maintain the Property and any Hazardous Substance that are on or to be located thereon in compliance with all applicable Environmental Laws; (b) subject to the provisions of <u>Article 8</u>, at Landlord's cost and expense, observe and comply with all applicable Environmental Laws relating to the use, storage, management, handling, treatment, storage, and disposal of Hazardous Substances on, at, under, from or to the Property; (c) promptly undertake all actions necessary to investigate, remediate, abate, monitor or otherwise address any release or threatened release of Hazardous

15

Substances on, at, under, from or to the Property in violation of applicable Environmental Law and otherwise bring the Property into compliance, in all material respects, with applicable Environmental Law; (d) promptly pay or otherwise settle or dispose of any fine, penalty, charge or Imposition related to the presence or release of Hazardous Substances or any violation or alleged violation of Environmental Law prior to or during the Term or by or on behalf of, or otherwise attributable or alleged to be attributed to Landlord or its agents or representatives; (e) promptly upon receipt of notice or knowledge thereof, notify Tenant in writing and, if available, provide Tenant with copies of any material documentation relating to (i) any release or threatened release of Hazardous Substances on, at, under, from or migrating to the Property in violation of applicable Environmental Law; (ii) any commenced or threatened claim, cause of action, suit, notice, demand, or other proceeding with respect to Hazardous Substances with respect to Landlord or the Property, and (iii) any citations, orders, notices or other governmental communications received by Landlord or its agents or representatives with respect to Hazardous Substances on, at, under, from or relating to the Property or violations or alleged violations of Environmental Law by Landlord or with respect to the Property.

        4.1.8.<u>Indemnification of Landlord</u>.  Landlord shall protect, indemnify and hold harmless Tenant, its stockholders, directors, officers, agents, employees and beneficiaries and any of their respective successors or assigns with respect to this Lease (collectively, the "<u>Indemnitees</u>" and, individually, an "<u>Indemnitee</u>") for, from and against any and all debts, liens, claims, obligations, liabilities, sanctions, losses, causes of action, administrative orders or notices, costs, fines, penalties or expenses (including, without limitation, remediation and clean-up costs, reasonable attorney's and technical consultant's fees and expenses) imposed upon, incurred by or asserted against any Indemnitee resulting from, either directly or indirectly, the presence of any Hazardous Substances in, upon, over, under, at or from the Property, during or prior to the Term (even if such claim may arise after such date).  Landlord's obligation hereunder includes, but is not limited to, costs arising from or relating to personal injury or property damage and natural resource damage claims arising from the presence or release of such Hazardous Substances.  Upon Notice from Tenant or any other of the Indemnitees, Landlord shall undertake the defense, at Landlord's sole cost and expense, of any indemnification duties set forth herein, in which event, Landlord shall not be liable for payment of any duplicative attorneys' fees incurred by any Indemnitee.  Landlord shall, upon demand, pay to Tenant, any cost, expense, loss or damage (including, without limitation, reasonable attorneys' fees) incurred by Tenant and arising from a failure of Landlord to fully observe and perform the requirements of this Section.

        4.1.9.<u>Survival</u>.   The provisions of this Section 4.3 shall survive the expiration or sooner termination of this Lease.

4.4 <u>Operations; Operating Agreement</u>.  Landlord shall use the remainder of the Building with the exception of the fifth and sixth floors not leased to Tenant as a first class, cloth napkin bar/restaurant with a bar located on that portion of the first (1st) floor of the Building not leased to Tenant, in the location as agreed to between Landlord and Tenant. Landlord may at their sole discretion lease the fifth and sixth floors to any other tenant for any lawful use.  Landlord shall cause its building, restaurant and bar operator, assumed to initially be Landlord's Agent, to enter into an agreement (or agreements) annually with Tenant with respect to the use and operation of the bar and restaurant in the Tenant's demises Premises as well as all services required by Tenant to operate as a members club, including staffing, amenities, fitness center, and accounting, among other things. Should the operator and Tenant agree that Tenant would be best able to handle any services related to club management then the amount required will be reserved by/to Tenant from member dues. Prior to the commencement of the Lease, Landlord and/or Landlord's Agent shall mutually agree on the first operating agreement. Commencement cannot begin until the first operating agreement is finalized.

5.

MAINTENANCE AND REPAIRS; COMPLIANCE

Maintenance and Repair.

5.1.1. <u>Tenant's General Obligations</u>.  Subject to Section 6.1 hereof, Tenant shall, at its sole cost and expense, keep the Demised Premises (and Tenant's Personal Property) in good order and repair, reasonable wear and tear excepted (whether or not the need for such repairs occurs as a result of Tenant's use, any prior use, Insurance Requirements, the elements or the age of the Demised Premises or Tenant's Personal Property or any portion thereof), and shall promptly make all repairs, corrections, maintenance, alterations, improvements, renovations, installations, renewals and additions (collectively, "<u>Tenant Repairs</u>") thereto of every kind and nature, whether interior or exterior, structural or nonstructural, ordinary or extraordinary, foreseen or unforeseen or arising by reason of a condition existing prior to the commencement of the Term (concealed or otherwise).  All Tenant Repairs shall be made in a good, workmanlike manner, consistent with industry standards for like property in like locales, in accordance with all applicable federal, state, territorial and local statutes, ordinances, codes, rules and regulations relating to any such work.  Tenant shall have access to other parts of the Building not leased to Tenant and any systems servicing the Demised Premises and/or the Building, in order to make any such Tenant Repairs or in connection with the maintenance or use of the Demised Premises by Tenant.  Tenant shall not take or omit to take any action, the taking or omission of which would materially and adversely impair the value or the usefulness of the Demised Premises or any material part thereof for its Permitted Use. Notwithstanding,  as long as all dues are

17

paid to Landlord or Landlord's Agent directly as part of Basic Rent, Tenant's General Obligations will be the responsibility of Landlord or Landlord's Agent, as the case may be.

        5.1.2. Landlord shall, at its sole cost and expense, keep the Property in good order and repair, reasonable wear and tear excepted (whether or not the need for such repairs occurs as a result of Landlord's use, any prior use, Insurance Requirements, the elements or the age of the Property or any portion thereof), and shall promptly make all repairs, corrections, maintenance, alterations, improvements, renovations, installations, renewals and additions (collectively, "Repairs") thereto of every kind and nature, whether interior or exterior, structural or nonstructural, ordinary or extraordinary, foreseen or unforeseen or arising by reason of a condition existing prior to the commencement of the Term (concealed or otherwise). All Repairs shall be made in a good, workmanlike manner, consistent with industry standards for like property in like locales, in accordance with all applicable federal, state, territorial and local statutes, ordinances, codes, rules and regulations relating to any such work. Landlord shall not take or omit to take any action, the taking or omission of which would materially and adversely impair the value or the usefulness of the Property or any material part thereof for its permitted use, including the Permitted Use.

        5.1.3. Landlord Not Obligated to Maintain or Restore the Demised Premises. Except for Tenant Improvement Allowances as set forth in this Lease and the Line of Credit extended to Tenant, Landlord shall not, under any circumstances, be required to build or rebuild any improvement on the Demised Premises, or to make any repairs, replacements, alterations, restorations or renewals of any nature or description to the Demised Premises, whether ordinary or extraordinary, structural or nonstructural, foreseen or unforeseen, or to make any expenditure whatsoever with respect thereto, or to maintain the Demised Premises in any way. Tenant hereby expressly waives, to the maximum extent permitted by law, the right to make repairs at the expense of Landlord pursuant to any Legal Requirement in effect on the date hereof or hereafter enacted. Landlord shall have the right to give, record and post, as appropriate, notices of non-responsibility under any mechanic's lien laws now or hereafter existing.

        5.1.4. Nonresponsibility of Landlord, Etc. All materialmen, contractors, artisans, mechanics and laborers and other persons contracting with Tenant with respect to the Demised Premises, or any part thereof, are hereby charged with notice that liens on the Demised Premises or on Landlord's interest therein are expressly prohibited and that they must look solely to Tenant to secure payment for any work done or material furnished by Tenant or for any other purpose during the term of this Lease. Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer or materialmen for the performance of any labor or the furnishing of any materials for any alteration, addition, improvement or repair to the Demised Premises or any part thereof or as giving Tenant any right, power or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any lien against the Demised Premises or any part thereof nor to subject Landlord's estate in the Property or any part thereof to liability under any mechanic's lien law of the State in any way, it being expressly understood Landlord's estate shall not be subject to any such liability.

Tenant's Personal Property.  Tenant shall provide and maintain throughout the Term all such Tenant's Personal Property as shall be necessary in order to operate in compliance with all Legal Requirements and Insurance Requirements and otherwise in accordance with customary practice in the industry for the Permitted Use.  Tenant may remove and replace Tenant's Personal Property periodically during the term of this Lease. However, Landlord acknowledges that the Tenant has sold all of the kitchen equipment needed to function as a bar/restaurant and Landlord shall replace same and they shall remain the Landlord's property.

Intentionally Omitted.

At End Of Term.

> 5.1.5.Hand-over.   Upon the expiration or sooner termination of this Lease (and provided that the Property is not conveyed to Tenant, or an Affiliate of Tenant):

> (a)    Tenant shall vacate and surrender the Demised Premises to Landlord in substantially the same condition in which the Demised Premises was in on the Commencement Date, except as repaired, rebuilt, restored, altered or added to, reasonable wear and tear excepted (and Condemnation, in the event that this Lease is terminated following a Condemnation in accordance with Article 11 excepted).

> (b)    Tenant will deliver any and all keys or other access devices of the Demised Premises, to Landlord.

> (c)    Tenant will assign to Landlord or its designee any assignable real estate related licenses and all assignable permits (it being understood and agreed that liquor licenses are generally not assignable) pertaining to the Demised Premises and will otherwise reasonably cooperate with Landlord, but at no cost or expense to Tenant, as may be necessary for the transfer of any and all assignable licenses and permits pertaining to the Demised Premises to Landlord or Landlord's designee.

> 5.1.6.Survival.   The provisions of this Section 5.4 shall survive the expiration or earlier termination of this Lease.

6.
ALTERATIONS AND IMPROVEMENTS

Alterations.  Provided that no Event of Default has occurred that is ongoing, Tenant shall have the right, upon and subject to the terms and conditions set forth below, to make Alterations (as hereinafter defined).  Tenant shall not be permitted to create, or allow to be created, any lien on all or any portion of the Demised Premises and the Property in connection with Alterations.

Other Alterations and Improvements.  Tenant may alter, improve, replace, modify or expand (each, or collectively, as the context requires "Alterations") the Improvements, the Demised Premises or the Property from time to time as it may determine is desirable for its permitted use; provided, however, that any Alterations that (i) require demolition or building permits, or any approvals from a landmarks preservation commission or similar governmental authority, (ii) affect in any material adverse way the Building Systems or the structural components of the Improvements or the

19

exterior appearance, and (iii) exceed Five Hundred Thousand Dollars ($500,000.00) in any rolling 12-month period, shall require Landlord's prior consent, which consent shall not be unreasonably withheld, conditioned or delayed.  Landlord shall respond to any request for consent to Alterations hereunder within ten (10) Business Days after such request.  If Landlord fails to respond within such ten (10) Business Day period, Tenant may provide a second written request for consent to Alterations hereunder, which second request must indicate on its face that a failure by Landlord to respond will be deemed approval, in which event Landlord will be deemed to have given its consent to such Alterations if Landlord fails to respond within seven (7) calendar days from the date of such second written request.  In addition, the following terms and conditions shall apply:

6.1.1. If the Alterations require Landlord's approval under Section 6.2, prior to commencing any Alterations, Tenant shall have submitted to Landlord a written proposal describing in reasonable detail such proposed Alteration and shall provide to Landlord for approval such drawings, plans and specifications, authorizations, construction budgets and other information as Landlord shall reasonably request, showing in reasonable detail the scope and nature of the proposed Alteration.  Any approval by Landlord under this Section 6.2 shall not be unreasonably withheld, conditioned or delayed.

6.1.2. All Alterations shall be done in a good and workmanlike manner using materials comparable for those used in comparable facilities in the market, in compliance with all Legal Requirements and Insurance Requirements.

6.1.3. Tenant shall procure and pay for all municipal and other governmental permits and authorizations required with regard to its construction (as well as any permits or approvals required in connection with any Permitted Encumbrance). Upon request, Landlord shall join in the application for any such permits or authorizations, provided that any such joinder shall be at no liability, cost or expense to Landlord.

6.1.4. Prior to the commencement of any Alterations, any contractors or subcontractors working in or on the Property in connection with any such Alterations shall have delivered to Tenant certificates of insurance that evidence the coverage required by Section 9.1(m).

6.1.5. No construction in respect of any Alteration shall materially adversely impair the structural strength of any component of the Improvements or overburden or impair the operating efficiency of the Building Systems.  If and to the extent that the Alterations impact structural components of any Improvements or Building Systems in any material respect, Tenant's licensed architect or engineer shall confirm that the plans and specifications conform to and comply with all applicable Legal Requirements and all Insurance Requirements related to building, subdivision and zoning and shall not impair the structural strength of any component of the applicable Improvements or overburden or impair the operating efficiency of the electrical, water, plumbing, HVAC or other Building Systems thereof.

6.1.6. Promptly following the completion of any Alterations that required Landlord's prior approval or consent, to the extent reasonably applicable to such Alterations, Tenant shall deliver to Landlord (x) "as built" drawings of any Alterations

included therein, prepared by the licensed architect or engineer selected by Tenant to supervise such work and (y) a certificate from Tenant's licensed architect or engineer certifying to Landlord that such Alterations have been completed in compliance in all material respects with the drawings and plans and specifications approved by Landlord, and all applicable Legal Requirements.

6.1.7.If a new or revised certificate of occupancy for any component of the applicable Improvements is required as a result of any Alteration, Tenant shall obtain such certificate in compliance with all applicable Legal Requirements and furnish a copy of the same to Landlord promptly upon receipt thereof.

Easements.  Landlord, from time to time, shall when reasonably requested by Tenant in connection with the exercise of its rights under this Lease (provided Tenant pays Landlord's costs relating to such request upon demand) with respect to all or any part of the Property: (i) grant easements, covenants and restrictions, and other rights in the nature of easements, covenants and restrictions, (ii) release existing easements, covenants and restrictions, or other rights in the nature of easements, covenants or restrictions, that are for the benefit of any part of the Property, (iii) dedicate or transfer unimproved portions of the Land for road, highway or other public purposes, (iv) execute petitions to have any part of the Property annexed to any municipal corporation or utility district, (v) execute amendments to any easements, covenants and restrictions affecting any part of the Property, and (vi) execute and deliver to any Person any instrument appropriate to confirm or effect such grants, releases, dedications and transfers (to the extent of its interests in the Property) without the necessity of obtaining Tenant's consent, provided that any such easement or other instrument or action contemplated by this Section 6.3 does not unreasonably interfere with the conduct of the Tenant's use and enjoyment of the Demised Premises.  If any easement or other instrument or action described in this Section 6.3 taken by Landlord could unduly or unreasonably interfere with the use and enjoyment of the Demised Premises by Tenant, Landlord shall obtain Tenant's prior consent to such proposed easement, instrument or action, which consent may be granted or withheld by Tenant in its sole discretion.

Encroachments; Restrictions.  If any of Tenant's leasehold improvements shall, at any time, encroach upon any property, street or right-of-way adjacent to any portion of the Property, or shall violate the agreements or conditions contained in any federal, state or local law, restrictive covenant or other agreement affecting the Property, or any part thereof, or shall impair the rights of others under any easement or right-of-way to which the Property or any portion thereof is subject, then, promptly upon the request of Landlord, Tenant shall, at its expense, subject to its right to contest the existence of any encroachment, violation or impairment, (a) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation or impairment, whether the same shall affect Landlord or Tenant or (b) make such changes in the Tenant's leasehold improvements, and take such other actions, as Landlord reasonably determines, to remove such encroachment, or to end such violation or impairment, including, if necessary, the alteration of any of the leasehold improvements, and, in any event, take all such actions as may be necessary to continue the operation of the Demised Premises without such violation, encroachment or impairment.  Any such alteration shall be made in conformity with the applicable requirements of this Lease.  Tenant's obligations under this Section 6.5 shall be in addition to, and shall in no way discharge or diminish any obligation of, any insurer under any policy of title or other insurance, and Tenant shall be entitled to a credit for

any sums paid by Tenant and recovered by Landlord under any such policy of title or other insurance, less Landlord's reasonable costs and expenses to recover such sums.

6.5    Landlord's Capital Additions.    Landlord shall upon the Commencement Date commence and diligently pursue to completion Landlord's Capital Additions, at Landlord's sole cost and expense. Landlord shall provide notice to Tenant at least forty five (45) days prior to the commencement of any part or phase of the Capital Additions that would in any way impact Tenant's use of the Demised Premises or any part thereof, and Landlord shall use all commercially reasonable efforts to mitigate interference with Tenant's business and use of the Demised Premises during the time that the Capital Additions are being constructed and completed. Landlord shall bid out, diligently construct, carry out and complete Landlord's Capital Additions in such a manner so as to permit Tenant to use and occupy as much of the Demised Premises as possible during such construction. Any and all infrastructure, systems, or other improvements to the Building that are required or desired as a result of the Capital Additions (whether or not such infrastructure, systems or improvements impact, service or are otherwise utilized by Tenant or the Demised Premises) shall be incorporated into and installed in the Building (and in the Demised Premises) by Landlord at Landlord's cost and expense. Landlord shall provide to Tenant a copy of the plans and specifications for the Capital Additions prior to the commencement of such work.

7.

LIENS

Subject to Article 8    Tenant shall not, directly or indirectly, create or allow to remain and shall promptly discharge, at its expense, any lien, encumbrance, attachment, title retention agreement or claim upon the Demised Premises, including those arising under Environmental Law, or any attachment, levy, claim or encumbrance in respect of the Rent, other than (a) Permitted Encumbrances including Leasehold Financing as permitted by this Lease, (b) restrictions, liens and other encumbrances which are consented to in writing by Landlord, (c) liens for those taxes of Landlord which Tenant is not required to pay hereunder, (d) liens for Impositions so long as the same are not yet due and payable, (e) liens of mechanics, laborers, materialmen, suppliers or vendors incurred in the ordinary course of business that are not yet due and payable, and (f) liens of a mortgage, deed of trust or other security interest held by Fee Mortgagee. Nothing herein contained shall prevent Tenant from contesting, in good faith and at its sole cost and expense, any lien, encumbrance, attachment, title retention agreement or claim, provided such contest complies with Article 8.

8.

PERMITTED CONTESTS

Tenant shall have the right to contest the amount or validity of any Legal Requirements concerning the Property, or any obligations in respect of Impositions, liens, violations or encumbrances on the Property and relating to the Term, or the application thereof, by appropriate proceedings, conducted in good faith and with due diligence and at Tenant' s own expense. During such contest, compliance with any such contested Legal Requirements and the payment of Impositions or removal of liens, violations or encumbrances may be deferred by Tenant upon condition that, before instituting any such proceedings, Tenant shall furnish to Landlord such

security (in the form of a surety company bond, letter of credit, or otherwise) as Landlord shall reasonably require, to cover the cost of complying therewith, with interest, penalties, fines, fees and other expenses, for the period which such proceedings may reasonably be expected to take, securing compliance with such Legal Requirements and payment of all interest, penalties, fines, fees and expenses in connection therewith, and all obligations in respect of contested Impositions, liens, violations or encumbrances. Any such proceedings, instituted by Tenant shall be prosecuted to final adjudication with reasonable dispatch. Notwithstanding the furnishing of any bond, deposit or security, Tenant shall promptly pay contested Impositions or take such action as may be required to remove any contested liens or encumbrances, and promptly comply with any such Legal Requirements and such payment, release or compliance shall not be deferred if at any time the Property, or any part thereof, shall be in danger of being forfeited or lost or if Landlord shall be in danger of being subjected to criminal or civil liability or penalty by reason of nonpayment or noncompliance therewith or if any mortgage on the Landlord's interest would by reason of such contest or delay be in danger of being in default. Landlord agrees that it will cooperate with Tenant (including executing such reasonable documents as may be reasonably required and requested) in any such contest, to such extent, as the Tenant may reasonably request, it being understood, however, that Landlord shall not, be subject to any liability for the payment of any costs or expenses in connection with any proceeding brought by Tenant, and Tenant covenants to indemnify and save Landlord harmless from any such costs or expenses (other than overhead of Landlord's office and ordinary ministerial expenses of administration for a reasonable and ordinary amount of time).

9.
INSURANCE AND INDEMNIFICATION

General Insurance Requirements. During the Term, Tenant shall at all times keep its leasehold improvements and Tenant's Personal Property insured against loss or damage from such causes as are customarily insured against, by prudent tenants of similar facilities. Without limiting the generality of the foregoing, Tenant shall obtain and maintain in effect throughout the Term the kinds and amounts of insurance as described below. This insurance shall be written by insurance companies (i) reasonably acceptable to Landlord, (ii) that are rated at least an "A-VIII" or better by Best's Insurance Guide, and (iii) unless otherwise approved by Landlord, authorized, licensed and qualified to do insurance business in the state in which the Property is located. Tenant will pay or cause to be paid all insurance premiums for the insurance coverage required to be maintained pursuant to this section during the Term. The liability coverage shall name Landlord (and any other entity that Landlord may deem necessary) as additional insureds. All property, business interruption and boiler and machinery losses shall be payable to Tenant. Each insurance policy required hereunder must, unless otherwise expressly provided herein (i) provide primary insurance without right of contribution from any other insurance carried by Landlord, (ii) contain express permission for Tenant to enter into a waiver of subrogation rights in favor of Landlord, or any right of setoff or counterclaim against any insured party thereunder including Landlord, and (iii) as respects any third party liability claim brought against Landlord, obligate the insurer to defend Landlord as named insured thereunder. Evidence of insurance shall upon request be deposited with Landlord. Notwithstanding, as long as member dues are paid directly to Landlord or Landlord's Agent as Basic Rent all insurance will be paid by Landlord or Landlord's Agent.

23

Tenant shall obtain and maintain during the Term of this Lease insurance policies insuring against the following risks:

(a)     Commercial Property insurance written on a broad "all risk" or "special form causes of loss" policy form covering physical loss or damage to the leasehold improvements.  Unless otherwise provided such coverage shall be in an amount equal to the Full Replacement Cost.  Unless otherwise provided hereunder, all policy deductibles shall be borne in full by Tenant and must not exceed, per occurrence, an amount in excess of Ten Thousand Dollars ($25,000.00).  Tenant further agrees that it will notify Landlord of any loss in excess of $150,000.00 or greater.  Such coverage shall also cover such other insurable perils as then being obtained under good insurance practices maintained from time to time by commercial tenants for property and buildings similar to the subject Demised Premises.

(b)     Business Interruption and Extra Expense Insurance at limits to cover 100% of losses and/or expenses incurred over the period of indemnity not less than eighteen (18) months from time of loss.  Such policy shall include an agreed amount endorsement or a waiver of the coinsurance requirement.

(c)     Commercial General Liability on an occurrence basis providing single limit coverage in an amount not less than $1,000,000 per occurrence with an annual aggregate limit of not less than $2,000,000.  All allocated loss adjustment expenses, including defense costs, shall be in addition to the policy limits required above.  Such policy must stand on its own with no shared participation or proration and shall include coverages found on the ISO Commercial General Liability Policy form CG 0001, occurrence policy form, current edition, with deductible amounts reasonably acceptable to Landlord.  Tenant shall be responsible for funding all deductibles and retentions, including those that may be applicable to Landlord as an additional insured thereunder.

(d)     Worker's compensation and employers' liability insurance covering all persons employed by Tenant in connection with any work done on or about any of the Property for which claims for death, disease or bodily injury may be asserted against Landlord, Tenant or the Property or, in lieu of such Workers' Compensation Insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate agency of the State in which the Property is located.

(e)     Excess/Umbrella liability insurance in the minimum amount of Ten Million Dollars ($10,000,000) for each occurrence and aggregate combined single limit for all liability.  The umbrella shall follow form with the primary commercial general liability with respect to providing primary and non-contributory coverage to Landlord as an additional insured when required by written contract or agreement.  The umbrella liability policy shall name in its underlying schedule the policies of commercial general liability and employer's liability under the workers compensation policy.

(f)     Coverage for the cost of removal of debris of property damaged by an insured peril with the coverage limits included in the scheduled amount of buildings,

improvements and betterments, fixtures and personal property insurance located in the Demised Premises.

(g)    During the course of any Work, renovations or other construction:

(i)    Tenant shall cause (A) each contractor and subcontractor to maintain (*x*) Commercial General Liability insurance, including without limitation, products and completed operations and auto liability insurance, with limits of no less than $1,000,000 per occurrence and $3,000,000 in the aggregate through primary and umbrella liability policies, and (*y*) statutory workers' compensation insurance and employers liability insurance, and (B) any architectural and engineering firms to maintain professional liability insurance in amounts satisfactory to Landlord and any Fee Mortgagee; and

(ii)    Tenant shall maintain, or cause any general contractor to maintain, at all times during which structural construction, repairs or alterations are being made with respect to the Demised Premises the insurance provided for in subsection (a) above written on a Builder's Risk Completed Value form, (*w*) on a 100% non-reporting basis, (*x*) against all risks of physical loss, including flood, (*y*) including permission to occupy the subject property, and (*z*) with an agreed amount endorsement (including soft costs), specifications, blueprints/models, demolition, increased cost of construction and rental interruption for delayed opening on an actual loss sustained basis as pertinent, waiving co-insurance provisions.

Additional Insurance.  In addition to the insurance described above, Tenant shall maintain such additional insurance, including, without limitation, loss of rents insurance with respect to casualty or condemnation events to the extent the coverages set forth in Section 9.1(c) are not adequate, as may be required by Law or as reasonably required from time to time by Fee Mortgagee. Notwithstanding anything contained herein to the contrary, Landlord shall not be prohibited from purchasing and maintaining such additional insurance as it may determine, in its sole discretion and at its own expense, to be necessary to protect its interest in all or any portion of the Property.

9.3    <u>Landlord's Insurance</u>.    Landlord shall obtain and maintain throughout the Term of this Lease insurance policies insuring against the following risks:

(h)    Commercial Property insurance written on a broad "all risk" or "special form causes of loss" policy form covering physical loss or damage to the Property including building and improvements and betterments.  Unless otherwise provided such coverage shall be in an amount equal to the Full Replacement Cost value basis to the extent of the full insurable replacement value of the Property.  Unless otherwise provided hereunder, all policy deductibles shall be borne in full by Landlord and must not exceed, per occurrence, an amount in excess of Ten Thousand Dollars ($10,000.00).  Landlord further agrees that it will notify Tenant of any loss in excess of $150,000.00 or greater and that no claim at or in excess of such amount shall be settled without the prior written consent of Tenant, which consent shall not be unreasonably withheld, conditioned or delayed.  Such coverage shall also cover such other insurable perils as may be reasonably required by a Fee Mortgagee or as then being obtained under good insurance practices

maintained from time to time by commercial property owners for property and buildings similar to the subject property in height, location, nature, type of construction, and use, as evidenced by written advice from Landlord's insurance advisors.

(i)      Coverage for damage to the Property resultant from wind or named storm as identified via either the National Weather Service or other appropriate weather agency with coverage limits included in the scheduled amount of buildings, improvements and betterments, fixtures and personal property insurance

(j)      Broad form, replacement cost basis mechanical breakdown insurance covering all boilers or other pressure vessels, machinery, equipment and air conditioning or heating units located in, on or about the Property and insurance against physical loss, rental loss, extra expense, expediting loss and loss of occupancy or use arising from any breakdown in such amounts as are reasonably acceptable to Landlord.

(k)      Business Interruption and Extra Expense Insurance at limits to cover 100% of losses and/or expenses incurred over the period of indemnity not less than eighteen (18) months from time of loss.  Such policy shall include an agreed amount endorsement or a waiver of the coinsurance requirement.

(l)      Commercial General Liability on an occurrence basis providing single limit coverage in an amount not less than $1,000,000 per occurrence with an annual aggregate limit of not less than $2,000,000.  All allocated loss adjustment expenses, including defense costs, shall be in addition to the policy limits required above.  Such policy must stand on its own with no shared participation or proration and shall include coverages found on the ISO Commercial General Liability Policy form CG 0001, occurrence policy form, current edition, with deductible amounts reasonably acceptable to Landlord.

(m)      Worker's compensation and employers' liability insurance covering all persons employed by Landlord in connection with any work done on or about any of the Property for which claims for death, disease or bodily injury may be asserted against Landlord, Tenant or the Property or, in lieu of such Workers' Compensation Insurance, a program of self-insurance complying with the rules, regulations and requirements of the appropriate agency of the State in which the Property is located.

(n)      Excess/Umbrella liability insurance in the minimum amount of Ten Million Dollars ($10,000,000) for each occurrence and aggregate combined single limit for all liability.  The umbrella shall follow form with the primary commercial general liability with respect to providing primary and non-contributory coverage to Tenant as an additional insured when required by written contract or agreement.  The umbrella liability policy shall name in its underlying schedule the policies of commercial general liability and employer's liability under the workers compensation policy.

(o)      Liquor Liability/Dram Shop of at least Two Million Dollars ($2,000,000) per occurrence and annual aggregate.

(p)      Building ordinance coverage in amount deemed sufficient by Landlord and any Fee Mortgagee.  In any such policy, replacement cost of the undamaged portion of

the improvements and additional expense of demolition and increased cost of construction including increased cost from any changes in laws on restoration shall be included.

(q)    Coverage for the cost of removal of debris of Property damaged by an insured peril with the coverage limits included in the scheduled amount of buildings, improvements and betterments, fixtures and personal property insurance.

(r)    If the Property is in an area identified in the Federal Register by the Federal Emergency Management Agency (or any other applicable state or federal agency) as having a special flood hazard area, Tenant shall maintain flood insurance such insurance policy shall be in a form meeting the requirements of the current guidelines of the Federal Insurance Administration (or such other applicable state or federal agency) with a generally acceptable carrier, to the extent required by law, or to the extent not so required, to the extent such flood insurance, as applicable, is available at commercially reasonable rates and which provides for a recovery of insurance proceeds relating to the Property of not less than the greatest of (i) the outstanding principal balance of the amount of the Fee Mortgagee's loan to Landlord, (ii) the minimum amount required to compensate for damage or loss on a replacement cost basis, or (iii) the maximum amount of insurance that is available under the Flood Disaster Protection Act of 1973, as amended (or any other applicable state or federal agency).

(s)    Upon the request of a Fee Mortgagee, in the event that such coverage with respect to terrorist acts is not included as part of the insurance policy required by subsection (a) above, coverage against loss or damage by terrorist acts in an amount equal to one hundred percent (100%) of the full replacement value of the Property, including all fixtures and equipment, with a co-insurance clause, if any, only as acceptable to such Fee Mortgagee.

(t)    During the course of any work, renovations or other construction including Landlord's Capital Additions:

(i)    Landlord shall cause (A) each contractor and subcontractor to maintain ($x$) Commercial General Liability insurance, including without limitation, products and completed operations and auto liability insurance, with limits of no less than $1,000,000 per occurrence and $3,000,000 in the aggregate through primary and umbrella liability policies, and ($y$) statutory workers' compensation insurance and employers liability insurance, and (B) any architectural and engineering firms to maintain professional liability insurance in amounts reasonably satisfactory to Landlord and any Fee Mortgagee; and

(ii)    Landlord shall maintain, or cause any general contractor to maintain, at all times during which structural construction, repairs or alterations are being made with respect to the Property the insurance provided for in subsection (a) above written on a Builder's Risk Completed Value form, ($w$) on a 100% non-reporting basis, ($x$) against all risks of physical loss, including flood, ($y$) including permission to occupy the subject property, and ($z$) with an agreed amount endorsement (including soft costs), specifications, blueprints/models, demolition,

increased cost of construction and rental interruption for delayed opening on an
actual loss sustained basis as pertinent, waiving co-insurance provisions.

Waiver of Subrogation.  Landlord and Tenant hereby waive any and all rights of recovery against
the other, their officers, agents and employees, for all injury, loss of or damage to persons or
property, howsoever caused, including loss of use, to the extent such injury, loss or damage is
covered or should be covered by required insurance or any other insurance maintained by such
party, including sums within deductibles, retentions or self-insurance applicable thereto.  This
waiver applies to all first party property, business interruption, equipment, vehicle and workers
compensation claims (unless prohibited under applicable state statutes), as well as third party
liability claims.  This waiver shall be in addition to, and not in limitation or derogation of, any
other waiver or release contained in this Lease with respect to loss of, or damage to, property of
the parties hereto.  In as much as the above waivers preclude the assignment of any aforesaid claim
by way of subrogation to an insurance company, each party shall immediately give to each
insurance company providing coverage under this Lease, written notice of the terms of such
waivers, and to have said insurance policies properly endorsed, if necessary, to prevent the
invalidation of said insurance coverage by reason of said waivers.  Landlord and Tenant shall each
indemnify the other against any loss or expense, including reasonable attorneys' fees, resulting
from the failure to obtain such waiver from the insurer, if required.

Form of Insurance.  Prior to the execution and delivery of this Lease, and at least five (5) Business
Days prior to any insurance policy expiration date, Tenant shall deliver to Landlord (i) a certificate
of insurance, and (ii) copies of the insurance policies, in each case for the policies required to be
maintained by Tenant in accordance with this Lease.  All Policies shall contain (i) the agreement
of the insurer to give Landlord and Fee Mortgagee at least thirty (30) days' written notice prior to
cancellation or expiration of or change in such policies, or any of them.

Blanket Policy.  Notwithstanding anything to the contrary contained in this Article 9, Tenant's
obligation to maintain the insurance herein required may be brought within the coverage of a so
called blanket policy or policies of insurance carried and maintained by Tenant, provided, that (a)
the coverage thereby afforded will not be reduced or diminished from that which would exist under
a separate policy meeting all other requirements of this Lease, and (b) the requirements of this
Article 9 are otherwise satisfied.

Indemnification of Landlord.   Tenant shall protect, indemnify, defend and hold harmless
Indemnitees for, from and against all losses, liabilities, obligations, claims, damages, penalties,
causes of action, costs and reasonable expenses (including, without limitation, reasonable
attorneys' fees), to the maximum extent permitted by law, imposed upon or incurred by or asserted
against any Indemnitee by reason of (a) any accident, injury to or death of persons or loss of or
damage to property occurring on or about the Demised Premises for periods prior to the later of
expiration of the Term or the date Tenant vacates the Demised Premises, (b) any past, present or
future use, misuse, non-use, condition, management, maintenance or repair on or about the
Demised Premises by Tenant, including, without limitation, any Costs incurred in connection with
any litigation, proceeding or claim by Governmental Agencies or other third parties to which
Landlord is made a party or participant as a result thereof, (c) any Impositions that are the
obligations of Tenant to pay pursuant to the applicable provisions of this Lease, (d) any contest
permitted under Article 8, (e) any failure on the part of Tenant or anyone claiming under Tenant

to perform or comply with any of the terms of this Lease, or (f) any and all lawful action that may be taken by Landlord in connection with the enforcement of the provisions of this Lease, whether or not suit is filed in connection with same, or in connection with Tenant and/or any partner, joint venturer, member or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; provided, however, that nothing herein shall be construed as indemnifying Landlord against its own negligent acts or willful misconduct. Any amounts which become payable by Tenant under this Section 9.6 shall be paid within fifteen (15) days after liability therefor on the part of Landlord is determined by litigation or otherwise and, if not timely paid, shall bear a late charge (to the extent permitted by law) at the Interest Rate from the date of such determination to the date of payment. Tenant, at its expense, may contest, resist and defend any such claim, action or proceeding asserted or instituted against an Indemnitee, with all due diligence and using counsel satisfactory to Landlord, in which event Tenant may compromise or otherwise dispose of the same, with Landlord's prior written consent (which consent may not be unreasonably withheld, conditioned or delayed), provided that such compromise or settlement shall include no admission of liability and Tenant pays any and all Costs pertaining thereto. The obligations of Tenant under this Section 9.6 are in addition to the obligations set forth in Section 4.3 and shall survive the expiration or sooner termination of this Lease.

10.
CASUALTY

Casualty; Adjustment of Loss. If any Casualty occurs, each party shall give the other immediate notice thereof. While Tenant shall be entitled to adjust, collect and compromise any claims, Landlord (and any Fee Mortgagee) are hereby authorized and shall be given an opportunity to take part in any adjustment, collection and compromise of claims under any of the insurance policies required by Section 9.1 (except public liability insurance claims payable to a Person other than Tenant, Landlord or Fee Mortgagee); *provided, however,* that if an Event of Default shall have occurred which shall be continuing, Landlord (and any Fee Mortgagee) are authorized to adjust, collect and compromise such claims and to execute and deliver on behalf of Tenant all necessary proofs of loss, receipts, vouchers and releases required by the insurers. Each insurer is hereby authorized and directed to make payment under said policies (other than payments made under the Business Interruption and Extra Expense insurance policy maintained in accordance with Section 9.1(d) over and above payments thereunder with respect to Rent payable to or for the benefit of the Landlord under this Lease and the return of unearned premiums), directly to Landlord or Tenant (as the case may be) in accordance herewith, or, if required by the applicable loan documents, to Fee Mortgagee instead of to Landlord and Tenant jointly, and Tenant hereby appoints each of Landlord and Fee Mortgagee as Tenant's attorneys-in-fact to endorse any draft therefor. The rights of Landlord under this Section 10.1 shall be extended to Fee Mortgagee if and to the extent that the applicable loan documents so provide. All Basic Rent and Additional Charges shall abate during any period of casualty hereunder.

Restoration Obligations.

        10.1.1.Landlord's Restoration Obligations. If a Casualty shall occur during the Term, Landlord shall promptly restore the Property regardless of the availability of insurance proceeds. Prior to commencing any work, Landlord shall furnish to Tenant

complete plans and specifications (the "Landlord's Restoration Plans and Specifications") describing the work Landlord intends to undertake to restore the affected portion of the Property (the "Restoration Work") for Tenant's approval, which approval shall not be unreasonably withheld, conditioned or delayed. Landlord's Restoration Plans and Specifications shall be prepared in accordance with good and customary construction and design practices and bear the signed approval thereof by an architect licensed to do business in the State of New York and shall be accompanied by a written estimate from Landlord's architect containing the projected cost of completing the Restoration Work. Landlord's Restoration Plans and Specifications shall describe the Restoration Work of such nature, quality and extent that, upon the completion thereof, the Building shall be at least equal in value and general utility to its value and general utility prior to the casualty event. Landlord shall satisfy all of the terms and conditions relative to Alterations as to the Restoration Work and Landlord's Restoration Plans and Specifications.  Without limiting the generality of the foregoing:

(a)     Prior to commencement of restoration by Landlord, (i) the architects, contracts, contractors, plans and specifications for the restoration shall have been approved by Tenant (which approval shall not be unreasonably withheld, delayed or conditioned).

(b)     Prior to the commencement of the Restoration Work, Landlord shall furnish to Tenant complete copies of all permits required by any and all applicable Legal Requirements or Insurance Requirements in connection with the commencement and conduct of the Restoration Work and all contracts between Landlord and its general contractor, architects, engineers and construction manager related to the Restoration Work.

(c)     Landlord shall perform the Restoration Work diligently and in a good, workmanlike and lien-free fashion, in accordance with Landlord's Restoration Plans and Specifications and all applicable Legal Requirements and Insurance Requirements and other requirements of this Lease.

(d)     Landlord shall use commercially reasonable efforts to cause the general contractor to complete the Restoration Work on or prior to the estimated completion date set forth in its agreement with such general contractor.

(e)     While the Restoration Work is being performed, Tenant and Tenant's representatives may, from time to time, inspect the Restoration Work upon reasonable prior notice to Landlord, provided Landlord's representative may accompany Tenant during such inspection.  Landlord shall pay the reasonable Costs incurred by Landlord in respect of any such inspection. If, during such inspection or otherwise, Tenant and Tenant's representatives determine that the Restoration Work is not being done in substantial accordance with Landlord's Restoration Plans and Specifications, this Lease or any Legal Requirements, upon receipt by Landlord from Tenant of a notice setting forth in reasonable specificity and detail any defect in the Restoration Work, Landlord will cause corrections to be made to any such defect.

10.1.2.<u>Tenant's Restoration Obligations</u>.  If a Casualty shall occur during the Term, Tenant shall promptly restore the leasehold improvements in the Demised Premises (or any portion thereof) regardless of the availability of insurance proceeds; *provided, however,* that to the extent that Property Loss Insurance Proceeds would have been available to pay the costs of restoration, but such amounts are not available as a result of same being retained and applied by Fee Mortgagee under <u>Section 10.6</u>, Tenant's restoration obligations hereunder shall be conditioned upon Landlord disbursing funds in replacement of the amounts so retained and applied by Fee Mortgagee pursuant to <u>Section 10.6</u>.  Prior to commencing any work, Tenant shall furnish to Landlord complete plans and specifications (the "<u>Restoration Plans and Specifications</u>") describing the work Tenant intends to undertake to restore the leasehold improvements in the Demises Premises (or any portion thereof) (the "<u>Work</u>") for Landlord's approval, which approval shall not be unreasonably withheld, conditioned or delayed. The Restoration Plans and Specifications shall be prepared in accordance with good and customary construction and design practices and bear the signed approval thereof by an architect licensed to do business in the State of New York and shall be accompanied by a written estimate from Tenant's architect containing the projected cost of completing the Work. The Restoration Plans and Specifications shall describe Work of such nature, quality and extent that, upon the completion thereof, the leasehold improvements shall be at least equal in value and general utility to its value and general utility prior to the casualty event. Tenant shall satisfy all of the terms and conditions relative to Alterations as to the Work and the Restoration Plans and Specifications.  Without limiting the generality of the foregoing:

(a)    Prior to commencement of restoration by Tenant, (i) the architects, contracts, contractors, plans and specifications for the restoration shall have been approved by Landlord (which approval shall not be unreasonably withheld, delayed or conditioned).

(b)    Prior to the commencement of the Work, Tenant shall furnish to Landlord complete copies of all permits required by any and all applicable Legal Requirements or Insurance Requirements in connection with the commencement and conduct of the Work and all contracts between Tenant and its general contractor, architects, engineers and construction manager related to the Work.

(c)    Tenant shall perform the Work diligently and in a good, workmanlike and lien-free fashion, in accordance with the Restoration Plans and Specifications and all applicable Legal Requirements and Insurance Requirements and other requirements of this Lease.

(d)    Tenant shall use commercially reasonable efforts to cause the general contractor to complete the Work on or prior to the estimated completion date set forth in its agreement with such general contractor.

(e)    While the Work is being performed, Landlord and Landlord's representatives may, from time to time, inspect the Work upon reasonable prior notice to Tenant, provided Tenant's representative may accompany Landlord during such inspection.  Landlord shall pay the reasonable Costs incurred by Landlord or Fee Mortgagee in respect of any such inspection. If, during such inspection or otherwise,

Landlord and Landlord's representatives determine that the Work is not being done in substantial accordance with the Restoration Plans and Specifications, this Lease or any Legal Requirements, upon receipt by Tenant from Landlord of a notice setting forth in reasonable specificity and detail any defect in the Work, Tenant will cause corrections to be made to any such defect.

Application of Insurance Proceeds.  Provided no Event of Default has occurred and is continuing, and provided Tenant is diligently performing the Work in accordance with this Lease, Landlord shall disburse such Property Loss Insurance Proceeds as may be available as and when required by Tenant in accordance with normal and customary practice for the payment of a general contractor in connection with construction projects similar in scope and nature to the Work, including, at Landlord's option, the withholding of 5% of the value of the Work described in each Property Loss Insurance Proceeds disbursement request until the Work is completed (as evidenced by a certificate of occupancy or similar evidence issued upon an inspection by the applicable Government Agencies) and proof has been furnished to Landlord that no lien has attached or will attach to the Property or to Landlord in connection with the Work; *provided, however,* that upon substantial completion of the Work, the foregoing 5% retention may be reduced to the greater of either (i) 3% of the value of the remaining Work (as reasonably determined by Landlord), or (ii) 125% of the then outstanding punch-list items and/or uncompleted Work (as reasonably determined by Landlord).  If the Property Loss Insurance Proceeds are not sufficient to pay the costs of the Work in full, Tenant shall nevertheless remain responsible, at its sole cost and expense, to complete the Work to the extent of the available proceeds and any retention or deductibles held by Tenant with respect to the applicable insurance.  If at any time the estimated cost of completing the Work free and clear of all liens, as reasonably determined by Landlord, exceeds the amount of the Property Loss Insurance Proceeds, the amount of such excess shall be paid by Tenant and applied to the cost of the Work before the disbursement of any Property Loss Insurance Proceeds. At the completion of the Work, any remaining unused Property Loss Insurance Proceeds, shall, notwithstanding anything herein to the contrary, be paid or refunded to Tenant.  Any disbursement of Property Loss Insurance Proceeds shall be subject to the following conditions:

(f)     at the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed against the Demised Premises and remain undischarged or unbonded;

(g)     disbursements shall be made from time to time in an amount not exceeding the cost of the Work completed since the last disbursement, upon receipt of (A) reasonably satisfactory evidence, including architects' certificates, of the stage of completion, the estimated total cost of completion and performance of the work to date in a good and workmanlike manner in accordance with the contracts, plans and specifications, (B) conditional or partial waivers of liens, (C) contractors' and subcontractors' certified statements as to completed work and the cost thereof for which payment is requested, (D) a satisfactory bring down of title insurance and (E) other evidence of cost and payment so that Landlord and Fee Mortgagee can verify that the amounts disbursed from time to time are represented by work that is completed, in place and free and clear of mechanics' and materialmen's lien claims; and

(h)    each request for disbursement shall be accompanied by a certificate of Tenant, signed by a duly authorized officer of Tenant, describing the Work for which payment is requested, stating the cost incurred in connection therewith, stating that Tenant has not previously received payment for such Work and, upon completion of the Work, stating that the work has been fully completed and complies with the applicable requirements of this Lease.

Upon the completion of the Work and the furnishing of such proof, the balance of the Property Loss Insurance Proceeds, if any, otherwise payable to Tenant on account of the Work shall be paid to Tenant. Prior to any final disbursement of Property Loss Insurance Proceeds, Tenant shall satisfy all of the conditions relative to Alterations as to the Work, as well as provide evidence reasonably satisfactory to Landlord that any amounts required to be paid by Tenant in connection with such Work have been paid in full. Notwithstanding anything in this Lease to the contrary, any Fee Mortgagee may retain and disburse the Property Loss Insurance Proceeds in accordance with this Lease (and such additional reasonable requirements of such Fee Mortgagee provided same are consistent with the terms of this Lease).

Waiver. Tenant hereby expressly waives any statutory or equitable rights of termination that may arise by reason of any damage or destruction of the Demised Premises, or any portion thereof, as well as waives all statutory or common law rights to vacate the Demised Premises or abate Rent.

Not Trust Funds. Notwithstanding anything in this Lease or at law or in equity to the contrary, none of the Property Loss Insurance Proceeds, or Net Award on account of any Condemnation, that may be paid to Landlord as provided by this Lease shall be deemed trust funds, and Landlord shall be entitled to dispose of such Property Loss Insurance Proceeds or Net Award as provided in Articles 10 and 11 of this Lease, as applicable.

Landlord Mortgage. Notwithstanding anything in this Lease to the contrary, if Fee Mortgagee elects to require that any Property Loss Insurance Proceeds in connection with any Casualty, or the Net Award in connection with any Condemnation, be applied by Landlord to reduce the outstanding principal balance of any loan secured by the Property, Landlord shall be obligated to disburse its own funds in replacement for any Property Loss Insurance Proceeds or Net Award so applied by the Fee Mortgagee, and, in such event, Landlord's own funds shall be disbursed to Tenant from time to time as, when and subject to the satisfaction of the same terms, conditions and requirements as would have governed the disbursement of the Property Loss Insurance Proceeds or Net Award that Landlord's funds replace (e.g., the requirements of Section 10.2.1 shall continue to be required to be satisfied as a pre-condition to any disbursement of Landlord's funds).

11.

CONDEMNATION

Condemnation. Landlord and Tenant, immediately upon receiving notice or actual knowledge (as opposed to constructive knowledge) of the institution of any proceeding for Condemnation (a "Condemnation Notice"), shall notify the other thereof. Landlord, Tenant and Fee Mortgagee are authorized to collect, settle and compromise, in their discretion, the amount of any Net Award with respect to their own loss. Tenant shall be entitled to participate with Landlord and Fee Mortgagee in any Condemnation proceeding or negotiations under threat thereof and to contest the

Condemnation or the amount of the Net Award therefor.  Landlord or Tenant shall make no agreement with any Condemnor in settlement or under threat of any Condemnation without the written consent of the other and any Fee Mortgagee.  The rights of Landlord under this Section 11.1 shall also be extended to Fee Mortgagee if and to the extent that the applicable loan documents so provide

Total or Substantial Condemnation.  If either (i) all of the Building, the Demised Premises or the Improvements shall be taken by Condemnation or (ii) a Condemnation of less than a whole of the Building, the Demised Premises or such Improvements renders the Demised Premises Unsuitable for Permitted Use, this Lease shall terminate on such date that all of the following conditions have been satisfied:  (A) the Net Award shall have been paid to Landlord and Tenant as the case may be; (B) all accrued and unpaid Basic Rent due through the date of such termination shall have been paid by Tenant to Landlord; and (C) the amount of all Additional Charges and Monetary Obligations shall be prorated as of the date of termination and the amounts payable for periods prior to such date shall be paid by Tenant to Landlord.

Partial Condemnation.  In the event of a Condemnation of less than the whole of the Demised Premises and/or the Improvements such that the Demised Premises or the Improvements are not rendered Unsuitable for Permitted Use, this Lease shall continue and Tenant shall commence promptly and continue diligently to restore the untaken portion of the applicable Demised Premises and Landlord shall commence promptly and continue diligently to restore the untaken portion of the Improvements so that such Demised Premises and such Improvements shall constitute a complete architectural unit of the same general character and condition (as nearly as may be possible under the circumstances) as such Demised Premises and Improvements existing immediately prior to such Condemnation, in material compliance with all Legal Requirements.  If the cost of the repair or restoration of the Demised Premises exceeds the amount of the Net Award, Tenant shall pay and assume the amount of such deficiency; *provided, however,* that to the extent that the Net Award would have been available to pay the costs of restoration, but such amounts are not available as a result same being retained and applied by Fee Mortgagee under Section 10.6, Tenant's restoration obligations hereunder shall be conditioned upon Landlord disbursing funds in replacement of the amounts so retained and applied Fee Mortgagee pursuant to Section 10.6.  Upon the receipt by Landlord of the Net Award, Landlord shall make such Net Award available to Tenant for such restoration or reconfiguration in accordance with and subject to compliance with the following terms and conditions:

> (a)    prior to commencement of restoration by Tenant, (*x*) the architects, contracts, contractors, plans and specifications for the restoration shall have been approved by Landlord, which approval shall not be unreasonably withheld or delayed, and (y) Landlord and Fee Mortgagee shall be provided with acceptable performance and payment bonds which insure satisfactory completion of and payment for the restoration, are in an amount and form and have a surety acceptable to Landlord, and name Landlord and Fee Mortgagee as additional dual obligees;

> (b)    at the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed against the Demised Premises and remain undischarged or unbonded;

(c)     disbursements shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement, upon receipt of (1) satisfactory evidence, including architects' certificates, of the stage of completion, the estimated total cost of completion and performance of the work to date in a good and workmanlike manner in accordance with the contracts, plans and specifications, (2) conditional or partial waivers of liens, (3) contractors' and subcontractors' sworn statements as to completed work and the cost thereof for which payment is requested, (4) a satisfactory bring down of title insurance and (5) other evidence of cost and payment so that Landlord and Fee Mortgagee can verify that the amounts disbursed from time to time are represented by work that is completed, in place and free and clear of mechanics' and materialmen's lien claims;

(d)     each request for disbursement shall be accompanied by a certificate of Tenant, signed by a duly authorized officer of Tenant, describing the work for which payment is requested, stating the cost incurred in connection therewith, stating that Tenant has not previously received payment for such work and, upon completion of the work, also stating that the work has been fully completed and complies with the applicable requirements of this Lease; and

(e)     Landlord may require a retention of up to ten percent (10%) of the costs of construction until the restoration is fully completed; *provided, however,* that upon substantial completion thereof, the foregoing 10% retention may be reduced to the greater of either (i) 5% of the value of the remaining work (as reasonably determined by Landlord), or (ii) 125% of the then outstanding punch-list items and/or uncompleted work (as reasonably determined by Landlord).

Prior to commencement of restoration and at any time during restoration, if the estimated cost of completing the restoration work free and clear of all liens, as reasonably determined by Landlord, exceeds the amount of the Net Award available for such restoration, the amount of such excess shall be paid by Tenant and applied to the cost of the restoration before the disbursement of any Net Award.  If, at the completion of the restoration, any remaining unused Net Award (up to the sum so added or paid by Tenant), shall, notwithstanding anything herein to the contrary, be paid or refunded to Tenant.  Any remaining unused Net Award in excess of the sums added or paid by Tenant shall be retained by Landlord (or it's Fee Mortgagee).

11.3.1 In the event of a Condemnation of less than the whole of the Building such that the Building is not rendered Unsuitable for Permitted Use, this Lease shall continue and Landlord shall commence promptly and continue diligently to restore the untaken portion of the Building so that the Building shall constitute a complete architectural unit of the same general character and condition (as nearly as may be possible under the circumstances) as the Building existing immediately prior to such Condemnation, in material compliance with all Legal Requirements.

Temporary Condemnation.  In the event of any temporary Condemnation of the Demised Premises or Tenant's interest therein, this Lease shall continue in full force and effect and Tenant shall continue to pay, in the manner and on the terms herein specified, the full amount of the Rent. Tenant shall continue to perform and observe all of the other terms and conditions of this Lease

on the part of the Tenant to be performed and observed. Provided no Event of Default has occurred and is continuing, the entire amount of any Net Award made for such temporary Condemnation allocable to the Term, whether paid by way of damages, rent or otherwise, shall be paid to Tenant. Tenant shall, promptly upon the termination of any such period of temporary Condemnation, at its sole cost and expense, restore the Demised Premises to the condition that existed immediately prior to such Condemnation, in material compliance with Legal Requirements, unless such period of temporary Condemnation shall extend beyond the expiration of the Term, in which event Tenant shall not be required to make such restoration.

12.
DEFAULTS AND REMEDIES

Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a)     Tenant's failure to make any payment of any Basic Rent or Additional Rent on or prior to its due date, regardless of the reason for such failure, and such failure remains uncured for seven (7) days from the date on which Notice of such failure is given by Landlord; or

(b)     Tenant's failure to maintain the insurance coverage required under Article 9; or

(c)     Tenant's default in the due observance or performance of any of the terms, covenants or agreements contained herein to be performed or observed by it (other than as specified in clauses (a) and (b) above) and such default shall continue for a period of thirty (30) days after Notice thereof from Landlord to Tenant; provided, however, that if such default is susceptible of cure but such cure cannot be accomplished with due diligence within such 30-day period and if, in addition, Tenant commences to cure or cause to be cured such default within thirty (30) days after Notice thereof from Landlord and thereafter continuously prosecutes the curing of such default with all due diligence, such cure period shall be extended for such period of time as shall be reasonably necessary to cure such default; or

(d)     If Tenant files a subsequent voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent, other than the present Chapter 11 Case, or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or any future applicable federal, state or other statute or law relative to bankruptcy, insolvency, or other relief for debtors, or seeks or consents to or acquiesces in the appointment of any trustee, receiver, conservator or liquidator of Tenant or of all or any substantial part of Tenant's properties or Tenant's interest in this Lease; (the term "acquiesce" as used in this Section 12.1(d) includes without limitation, the failure to file a petition or motion to vacate or discharge any order, judgment or decree within sixty (60) days after entry of such order, judgment or decree); or a court of competent jurisdiction enters an order, judgment or decree approving a petition filed against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or

36

any future federal bankruptcy act, or any other present or future applicable federal, state or other statute or law relating to bankruptcy, insolvency, or other relief for debtors, and Tenant acquiesces in the entry of such order, judgment or decree or such order, judgment or decree remains unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof, or any trustee, receiver, conservator or liquidator of Tenant or of all or any substantial part of Tenant's property or Tenant's interest in this Lease shall be appointed without the consent or acquiescence of Tenant and such appointment remains unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive); or

(e)    If this Lease or any estate of Tenant hereunder shall be levied upon under any attachment or execution and such attachment or execution is not vacated within ninety (90) days; or

(f)    If Tenant shall cause or institute any proceeding, or a final and nonappealable court order shall be issued for the dissolution or termination of Tenant; or

(g)    If Tenant admits in writing Tenant's inability to pay its debts as they mature; or

(h)    If Tenant makes a general assignment for the benefit of creditors or takes any other similar action for the protection or benefit of creditors; or

However,  because of Tenant's reliance on either Landlord or Landlord's Agent to provide services enabling Tenant to fulfill its legal, insurance and other obligations, failure by Landlord or Landlord's Agent to allow Tenant to perform its obligations under the lease will not constitute and event of default.

Remedies.

(i)    If an Event of Default shall have occurred and be continuing Landlord shall be entitled to all remedies available at law or in equity.  Without limiting the foregoing, Landlord shall have the right to give Tenant notice of Landlord's termination of the term of this Lease.  Upon the giving of such notice, the term of this Lease and the estate hereby granted shall expire and terminate on such date as fully and completely and with the same effect as if such date were the date herein fixed for the expiration of the term of this Lease, and all rights of Tenant hereunder shall expire and terminate, but Tenant shall remain liable as hereinafter provided.

(j)    If an Event of Default shall have happened and be continuing, Landlord shall have the immediate right, whether or not the term of this Lease shall have been terminated pursuant to Section 12.2(a), to re-enter and repossess the Demised Premises and the right to remove all persons and property therefrom by summary proceedings, ejectment, any other legal action or in any lawful manner Landlord determines to be necessary or desirable. Landlord shall be under no liability by reason of any such re-entry, repossession or removal.  No such re-entry, repossession or removal shall be construed as an election by Landlord to terminate this Lease unless a notice of such termination is given to Tenant pursuant to Section 12.2(a).

(k)     At any time or from time to time after a re-entry, repossession or removal pursuant to Section 12.2(b), whether or not the term of this Lease shall have been terminated pursuant to Section 12.2(a), Landlord may (but shall be under no obligation to) relet the Demised Premises for the account of Tenant, in the name of Tenant or Landlord or otherwise, without notice to Tenant, for such term or terms and on such conditions and for such uses as Landlord, in its absolute discretion, may determine. Landlord may collect any rents payable by reason of such reletting. Landlord shall not be liable for any failure to relet the Demised Premises or for any failure to collect any rent due upon any such reletting.

(l)     No expiration or termination of the term of this Lease pursuant to Section 12.2(a), by operation of law or otherwise, and no re-entry, repossession or removal pursuant to Section 12.2(b) or otherwise, and no reletting of the Demised Premises pursuant to Section 12.2(c) or otherwise, shall relieve Tenant of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, re-entry, repossession, removal or reletting.

(m)     In the event of any expiration or termination of the term of this Lease or re-entry or repossession of the Demised Premises or removal of persons or property therefrom by reason of the occurrence of an Event of Default, Tenant shall pay to Landlord all Basic Rent, Additional Rent and other sums required to be paid by Tenant, in each case together with interest thereon at the Interest Rate from the due date thereof to and including the date of such expiration, termination, re-entry, repossession or removal; and thereafter, Tenant shall, until the end of what would have been the term of this Lease in the absence of such expiration, termination, re-entry, repossession or removal and whether or not the Demised Premises has been relet, be liable to Landlord for, and shall pay to Landlord, as liquidated and agreed current damages: (i) all Basic Rent, Additional Rent and other sums which would be payable under this Lease by Tenant in the absence of any such expiration, termination, re-entry, repossession or removal, less (ii) the net proceeds, if any, of any reletting effected for the account of Tenant pursuant to Section 5.1(c), after deducting from such proceeds all expenses of Landlord in connection with such reletting (including, without limitation, all repossession costs, brokerage commissions, reasonable attorneys' fees and expenses (including fees and expenses of appellate proceedings), employees' expenses, alteration costs and expenses of preparation for such reletting). Tenant shall pay such liquidated and agreed current damages on the dates on which Basic Rent would be payable under this Lease in the absence of such expiration, termination, re-entry, repossession or removal, and Landlord shall be entitled to recover the same from Tenant on each such date.

(n)     At any time after any such expiration or termination of the term of this Lease or re-entry or repossession of the Demised Premises or removal of persons or property thereon by reason of the occurrence of an Event of Default, whether or not Landlord shall have collected any liquidated and agreed current damages pursuant to Section 12.2(e), Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord on demand, as and for liquidated and agreed final damages for Tenant's default and in lieu of all liquidated and agreed current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages), an

amount equal to the excess, if any, of (i) the aggregate of all Basic Rent, Additional Rent and other sums which would be payable under this Lease, in each case from the date of such demand (or, if it be earlier, the date to which Tenant shall have satisfied in full its obligations under Section 12.2(e) to pay liquidated and agreed current damages) for what would be the then-unexpired term of this Lease in the absence of such expiration, termination, re-entry, repossession or removal, discounted at a rate equal to the then rate on U.S. Treasury obligations of comparable maturity to the Term (the "Treasury Rate") over (ii) the then fair rental value of the Demised Premises, discounted at the Treasury Rate for the same period.  If any law shall limit the amount of liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such law.

(o)     No right or remedy hereunder shall be exclusive of any other right or remedy, but shall be cumulative and in addition to any other right or remedy hereunder or now or hereafter existing.  Failure to insist upon the strict performance of any provision hereof or to exercise any option, right, power or remedy contained herein shall not constitute a waiver or relinquishment thereof for the future.  Receipt by Landlord of any Basic Rent, Additional Rent or other sums payable hereunder with knowledge of the breach of any provision hereof shall not constitute waiver of such breach, and no waiver by Landlord of any provision hereof shall be deemed to have been made unless made in writing duly executed by Landlord.  Landlord shall be entitled to injunctive relief in case of the violation, or attempted or threatened violation, of any of the provisions hereof, or to a decree compelling performance of any of the provisions hereof, or to any other remedy allowed to Landlord by law or equity.

Waivers by Tenant; Additional Rights of Landlord.

(p)     Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have to redeem any portion of the Demised Premises or to have a continuance of this Lease after termination of Tenant's right of occupancy by order or judgment of any court or by any legal process or writ, or under the terms of this Lease, or after the termination of the term of this Lease as herein provided, and (ii) the benefits of any law which exempts property from liability for debt or for distress for rent.

(q)     If Tenant shall be in default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under any of the provisions of this Lease, then, without thereby waiving such default, Landlord may, but shall be under no obligation to, take all action, including, without limitation, entry upon the Demised Premises to perform the obligation of Tenant hereunder immediately and without notice in the case of an emergency and upon five (5) Business Days' notice to Tenant in other cases.  All expenses incurred by Landlord in connection therewith, including reasonable attorneys' fees and expenses (including those incurred in connection with any appellate proceedings), together with interest thereon at the Interest Rate from the date any such expenses were incurred by Landlord until the date of payment by Tenant, shall be paid by Tenant to Landlord upon demand.

(r)    If Tenant shall be in default in the performance of any of its obligations hereunder, Tenant shall pay to Landlord or Fee Mortgagee, as appropriate, on demand, all expenses incurred by Landlord or Fee Mortgagee as a result thereof, including reasonable attorneys' fees and expenses (including those incurred in connection with any appellate proceedings).  If Landlord or Fee Mortgagee shall be made a party to any litigation commenced against Tenant, Tenant shall (i) at its sole cost and expense, engage counsel acceptable to Landlord or any Fee Mortgagee, as applicable, in which case the parties shall enter into a written agreement regarding such engagement and defense in form and substance reasonably satisfactory to Tenant, Landlord and/or such Fee Mortgagee (it being agreed that counsel selected by any insurance company providing coverage for the underlying claims shall be acceptable to Landlord and any Fee Mortgagee for purposes of the application of this clause (i)); or (ii) if the selection of counsel is not so approved (or deemed approved), pay the reasonable attorneys' fees and other expenses incurred Landlord or such Fee Mortgagee in connection with the retention of its own counsel in such litigation (and which shall include, *inter alia*, fees and expenses incurred in connection with appellate proceedings)..

(d)    To the maximum extent permitted by Legal Requirements, each of the parties hereto expressly waives its rights to trial by jury with respect to this Lease or matters arising in connection herewith.    FURTHER TO THE FOREGOING, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LEGAL REQUIREMENTS, IF THIS LEASE IS TERMINATED PURSUANT TO SECTIONS 12.2, TENANT EXPRESSLY WAIVES, TO THE EXTENT PERMITTED BY LAW, (i) ANY RIGHT TO A TRIAL BY JURY IN THE EVENT OF SUMMARY PROCEEDINGS TO ENFORCE THE REMEDIES SET FORTH IN THIS <u>ARTICLE 12</u>, AND (ii) THE BENEFIT OF ANY LAWS NOW OR HEREAFTER IN FORCE EXEMPTING PROPERTY FROM LIABILITY FOR RENT OR FOR DEBT.

Application of Funds.  Any payments received by Landlord under any of the provisions of this Lease during the existence or continuance of any Event of Default (and any payment made to Landlord rather than Tenant due to the existence of any Event of Default) shall be applied to Tenant's current and past due obligations under this Lease in such order as Landlord may determine or as may be prescribed by the laws of the State.

Landlord's Right to Cure Tenant's Default; Attorneys' Fees.  If an Event of Default shall have occurred and be continuing, Landlord, after Notice to Tenant (which Notice shall not be required if Landlord shall reasonably determine immediate action is necessary to protect person or property), without waiving or releasing any obligation of Tenant and without waiving or releasing any Event of Default, may (but shall not be obligated to), at any time thereafter, make such payment or perform such act for the account and at the expense of Tenant, and may, to the maximum extent permitted by law, enter upon the Demised Premises or any portion thereof for such purpose and take all such action thereon as, in Landlord's sole and absolute discretion, may be necessary or appropriate therefor.  No such entry shall be deemed an eviction of Tenant.  All Costs incurred by Landlord in connection therewith, or in connection with the exercise of any remedy against Tenant pursuant to this Lease, shall be paid by Tenant to Landlord, on demand.

13.

HOLDING OVER

Any holding over by Tenant after the expiration or sooner termination of this Lease shall be treated as a daily tenancy at sufferance at a rate equal to one and one-half times the Basic Rent and other charges herein provided (prorated on a daily basis). Tenant shall also pay to Landlord all damages (direct or indirect) sustained by reason of any such holding over. Otherwise, such holding over shall be on the terms and conditions set forth in this Lease, to the extent applicable. Nothing contained herein shall constitute the consent, express or implied, of Landlord to the holding over of Tenant after the expiration or earlier termination of this Lease.

14.

INTENTIONALLY OMITTED

15.

SUBLETTING AND ASSIGNMENT

Subletting and Assignment. The prior written consent of Landlord shall be required in order for the Tenant to: (i) sell, assign, transfer, sublet or otherwise dispose of this Lease or all or any portion of the interest of Tenant in this Lease (or in any sublease or in any subrents) or the Demised Premises or any portion thereof, whether by operation of law or otherwise, except as expressly permitted in Section 20.1, or (ii) sell all or substantially all of its assets; or (iii) merge or consolidate with another Person. Notwithstanding anything to the contrary herein contained, (i) the sale of all or substantially all of the Tenant's assets, (ii) the merger, consolidation or reorganization of Tenant to another membership club or non-profit entity, or (iii) the assignment of this Lease or sublet of the Property to a not-for profit entity, shall not be deemed an assignment and shall not require Landlord's prior written approval or consent or compliance with Section 15.3 hereof.

Sublease Rent Assignment. In the event Landlord consents to a sublease, as security for performance of its obligations under this Lease, Tenant hereby grants, conveys and assigns to Landlord all right, title and interest of Tenant in and to all such subleases, any and all extensions, modifications and renewals thereof and all rents, issues and profits therefrom. Landlord hereby grants to Tenant a license to collect and enjoy all rents and other sums of money payable under any sublease of any of the Demised Premises; provided, however, that Landlord shall have the absolute right at any time after an Event of Default upon notice to Tenant and any subtenants to revoke said license and to collect such rents and sums of money and to retain the same. Tenant shall not consent to, cause or allow any modification or alteration of any of the terms, conditions or covenants of any sublease or the termination thereof, without the prior written approval of Landlord which consent shall not be unreasonably withheld nor shall Tenant accept any rents more than thirty (30) days in advance of the accrual thereof nor permit anything to be done, the doing of which, nor omit or refrain from doing anything, the omission of which, would result in a breach of or default in the terms of any sublease.

Other Conditions. In connection with any proposed transfer, conveyance, assignment or subletting consented to by Landlord: (a) Tenant shall pay to Landlord all reasonable expenses, including reasonable attorneys' fees, incurred by Landlord in connection with the transaction, (b) Tenant and any assignee, transferee, subtenant or other proposed party shall, within ten (10) days after notice

41

to do so, execute and deliver to Landlord such documents, including insurance, and take such further action, as Landlord may reasonably require to effect such transaction or to protect Landlord's rights, (c) Tenant shall provide Landlord with copies of any sublease or assignment immediately after made, (d) in the case of an assignment, the assignee must assume the obligations of Tenant under this Lease in a writing in form, scope and substance reasonably satisfactory to Landlord, (e) the acceptance by Landlord of Rent from any person other than Tenant shall not be deemed a waiver by Landlord of any provision of this Lease or a consent to any transfer or other transaction, (f) the consent to any particular transaction shall not be deemed a consent to any other transaction subject to this Article 15, and (g) the consent to any assignment, subletting or other such transfer (or the consummation of any such transaction) shall not in any way relieve Tenant of any of its obligations under this lease, whether arising before or after such consent.

16.

## ESTOPPEL CERTIFICATES

At any time and from time to time, but not more than a reasonable amount of times per year, upon not less than ten (10) Business Days prior Notice by either party, the party receiving such Notice shall furnish to the other an estoppel certificate, executed by a duly authorized officer or member of such party, (i) stating that this Lease is then in full force and effect and has not been modified (or that this Lease is in full force and effect as modified and setting forth the modifications), (ii) setting forth the date to which Basic Rent has been paid, (iii) stating whether, to the actual knowledge of the party delivering such estoppel, the other party is in default under this Lease, and, if such a default shall exist, specifying in reasonable detail the nature thereof, and the steps being taken to remedy the same, and such additional information as the requesting party may reasonably request, and (iv) stating any other matters reasonably requested by Landlord or Tenant (as applicable) and related to this Lease. The requesting party, its lenders and any prospective purchaser or mortgagee of the Property or the leasehold estate created hereby, may rely upon any such certificate furnished pursuant to this Article 16.

17.

## LANDLORD'S ACCESS

Inspection. Tenant shall permit Landlord and its authorized representatives to inspect the Demised Premises during usual business hours upon reasonable, prior written notice, provided that any inspection by Landlord or its representatives will not unreasonably interfere with Tenant's use and operation of the Demised Premises and further provided that in the event of an emergency, as determined by Landlord in its reasonable discretion, prior notice shall not be necessary.

18.
### LANDLORD FINANCING; SUBORDINATION; NON-DISTURBANCE

Landlord Financing.  If Landlord desires to obtain or refinance any loan secured by a mortgage lien on its fee interest in the Property, or to any superior lease or ground lease, Tenant shall negotiate in good faith with Landlord concerning any request made by the mortgagee providing such loan, or master landlord under such superior lease or ground lease (a "Fee Mortgagee") for changes or modifications in this Lease, so long as the same do not adversely affect any right, benefit or privilege of Tenant or increase Tenant's obligations under this Lease in any material respect.  In particular, Tenant shall agree, upon request of Landlord, to supply a Fee Mortgagee with such notices and information as Tenant is required to give to Landlord hereunder and to extend the rights of Landlord hereunder to Fee Mortgagee and to consent to such financing if such consent is requested by Fee Mortgagee.  Tenant shall provide any other consent or statement and shall execute any and all other documents that Fee Mortgagee requires in connection with such superior lease, ground lease or financing, including any environmental indemnity agreement and a hereinafter defined Non-Disturbance Agreement, so long as the same do not adversely affect any right, benefit or privilege of Tenant or increase Tenant's obligations under this Lease.

Subordination, NonDisturbance and Attornment.  This Lease and Tenant's interest hereunder shall be subordinate to any mortgage or other security instrument hereafter placed upon the Property by Landlord, and to any and all advances made or to be made thereunder, to the interest thereon, and to any superior lease or ground lease, and all renewals, replacements and extensions thereof. As a condition to Tenant's agreement hereunder to subordinate Tenant's interest in this Lease to any superior lease, ground lease, mortgage or other security instrument, Landlord shall obtain from Fee Mortgagee a subordination, non-disturbance and attornment agreement in recordable, subject to the provisions of this Section 18.2, in form, scope and substance reasonably satisfactory to Landlord, Tenant and any Fee Mortgagee (each, a "Non-Disturbance Agreement"), which shall be recorded in the New York City's Register's Office at Tenant's cost and expense, and pursuant to which:

> (a)    Fee Mortgagee shall agree that unless and until an Event of Default hereunder shall have occurred and be continuing or Landlord shall have the right to terminate this Lease pursuant to any applicable provision hereof, the leasehold estate granted to Tenant and the rights of Tenant under this Lease (including, without limitation, those set forth in Section 19.1) to quiet and peaceful possession of the Demised Premises shall not be terminated, modified, affected or disturbed by any action which Fee Mortgagee may take to foreclose any mortgage, deed of trust or other security instrument, and that any successor landlord shall recognize this Lease as being in full force and effect as if it were a direct lease between such successor landlord and Tenant upon all of the terms, covenants, conditions and options granted to Tenant under this Lease, except as otherwise provided in this Section 18.2; and

> (b)    Tenant shall agree that neither Fee Mortgagee nor its successors and assigns shall (i) be liable for any misrepresentation, act or omission of Landlord prior to the date Fee Mortgagee or its successor or assign shall succeed to the rights of Landlord under this Lease, (ii) subject to any counterclaim, demand or offsets which Tenant may have against Landlord prior to the date Fee Mortgagee or its successor and assign shall succeed to the

rights of Landlord under this Lease, and (iii) bound by any amendment or modification of this Lease, not expressly provided for in this Lease, or by any prepayment of more than one (1) months' fixed rent, unless such amendment or modification or prepayment shall have been expressly approved in writing by Fee Mortgagee.

If Fee Mortgagee shall succeed to the rights of Landlord under this Lease, whether through possession or foreclosure action or delivery of a new lease or deed, then at the request of such party so succeeding to Landlord's rights ("Successor Landlord") and upon Successor Landlord's written agreement to accept Tenant's attornment, Tenant shall attorn to and recognize Successor Landlord as Tenant's landlord under this Lease, and shall promptly execute and deliver any instrument that Successor Landlord may reasonably request to evidence such attornment.  Upon such attornment this Lease shall continue in full force and effect as, or as if it were, a direct lease between Successor Landlord and Tenant upon all of the terms, conditions and covenants as are set forth in this Lease (including, without limitation, those set forth in Article 19) and shall be applicable after such attornment except that Successor Landlord shall not be:  (A) liable for any misrepresentation, act or omission of Landlord prior to such attornment, (B) subject to any counterclaim, demand or offsets which Tenant may have against Landlord prior to such attornment, or (C) bound by any amendment or modification of this Lease, not expressly provided for in this Lease, or by any prepayment of more than three (3) months' fixed rent, unless such amendment or modification or prepayment shall have been expressly approved in writing by Fee Mortgagee.

19.
## RIGHT OF FIRST REFUSAL

Grant of Right of First Refusal.  If at any time during the term of this Lease (as same may be extended), Landlord shall receive, and wish to accept, a bona fide offer ("Purchase Offer") for the purchase of any or all of the Property ("ROFR Property"), Landlord shall notify Tenant in writing of the name of such third party and the terms of such offer, and in such event Landlord hereby gives and grants unto Tenant the option and right ("Right of First Refusal") to purchase the Property, at the same price, and on the same terms and conditions as are stated in the ROFR Purchase Offer, except that the dates for performance shall be extended by one day for each day acceptance by Tenant is after the last day Landlord was otherwise entitled to accept the Purchase Offer.

Exercise of Right of First Refusal.  In the event that Tenant wishes to exercise the ROFR, it shall notify Landlord of its intent so to do within thirty (30) days following the receipt of written notice from Landlord of the Purchase Offer.  Should the Tenant so exercise the right herein granted, Landlord shall be obligated to sell and convey the ROFR Property and Tenant shall be obligated to purchase the same from Landlord, all for the price and on the other terms and conditions (except as otherwise provided herein) as are stated in the Purchase Offer.

Failure to Exercise.  Should Tenant fail to so notify Landlord within the prescribed thirty (30) day period, Landlord shall be free to sell and convey the ROFR Property, free and clear of all restrictions otherwise imposed by this Agreement, but only to the purchaser identified in, and on the same terms and conditions and at no less a price than stated in the written notice from Landlord to Tenant.

Reinstatement; Non-Extinguishment.  Notwithstanding that Tenant should fail or refuse to exercise
its right to purchase the ROFR Property in the manner herein provided,

      (a)      If the ROFR Property, or any part thereof, is not sold and conveyed to the
third party submitting the Purchase Offer within the time-period and on terms no more
favorable to such third party than established by the Purchase Offer (as the same may be
extended by their joint agreement), the ROFR Property shall thereafter continue to be
subject to the terms and conditions imposed by this Article 19 and the first refusal
procedure established hereby shall be reinstated.

      (b)      The Right of First refusal shall not be extinguished and shall remain in full
force and effect during the term of this Lease notwithstanding the sale or transfer of the
ROFR Property.  If the ROFR Property, or any part thereof, is sold or conveyed pursuant
to a Purchase Offer, the ROFR Property shall thereafter continue to be subject to the Right
of First refusal and the terms and conditions imposed by this Article 19 and the first refusal
procedure established hereby shall continue with respect to any further or subsequent
Purchase Offer made during the term of this Lease.

20.<u>INTENTIONALLY DELETED</u>

21.<u>INTENTIONALLY DELETED</u>

22.
<u>MISCELLANEOUS</u>

No Waiver.  No failure by Landlord or Tenant to insist upon the strict performance of any term
hereof or to exercise any right, power or remedy consequent upon a breach thereof, and no
acceptance of full or partial payment of Rent during the continuance of any such breach, shall
constitute a waiver of any such breach or of any such term.  To the maximum extent permitted by
law, no waiver of any breach shall affect or alter this Lease, which shall continue in full force and
effect with respect to any other then existing or subsequent breach.

Remedies Cumulative.  To the maximum extent permitted by law, each legal, equitable or
contractual right, power and remedy of Landlord or Tenant, now or hereafter provided either in
this Lease or by statute or otherwise, shall be cumulative and concurrent and shall be in addition
to every other right, power and remedy and the exercise or beginning of the exercise by Landlord
or Tenant (as applicable) of any one or more of such rights, powers and remedies shall not preclude
the simultaneous or subsequent exercise by Landlord of any or all of such other rights, powers and
remedies.

No Merger of Title.  It is expressly acknowledged and agreed that it is the intent of the parties that
there shall be no merger of this Lease or of the leasehold estate created hereby by reason of the
fact that the same Person may acquire, own or hold, directly or indirectly this Lease or the
leasehold estate created hereby and the fee estate or ground landlord's interest in the Property.

Quiet Enjoyment.  Upon Tenant's payment of the Rent and performance of its other obligations
hereunder in accordance with the terms of this Lease, Tenant shall peaceably and quietly have,
hold and enjoy the Demised Premises for the Term, free of hindrance or molestation by Landlord

or anyone claiming by, through or under Landlord, but subject to all Permitted Encumbrances. Except as otherwise provided in this Lease, there shall be no mutuality of covenants, and no failure by Landlord to comply with the foregoing covenant shall give Tenant any right to cancel or terminate this Lease or abate, reduce or make a deduction from or offset against the Rent or any other sum payable under this Lease or to fail to perform any other obligation of Tenant hereunder.

Notices.

(a)    Any and all notices, demands, consents, approvals, offers, elections and other communications required or permitted under this Lease shall be deemed adequately given if in writing and the same shall be delivered either in hand or by mail or Federal Express or similar expedited commercial carrier, addressed to the recipient of the notice, postpaid and registered or certified with return receipt requested (if by mail), or with all freight charges prepaid (if by Federal Express or similar carrier).

(b)    All notices required or permitted to be sent hereunder shall be deemed to have been given for all purposes of this Lease upon the date of receipt or refusal, except that whenever under this Lease a notice is either received on a day which is not a Business Day or is required to be delivered on or before a specific day which is not a Business Day, the day of receipt or required delivery shall automatically be extended to the next Business Day.

(c)    All such notices shall be addressed:

To Landlord:                      GREAT EMPIRE REALTY, LLC
                                  139 Centre Street, Rm 310, NY NY 10013


With a copy to:                   Charles K. Luk, Esq.
                                  Luk & Luk, LLP
                                  Attorneys At Law
                                  254 Canal Street, Suite 2001
                                  New York, N.Y. 10013


To Tenant:                        Down Town Association, Inc.
                                  60 Pine Street
                                  New York, New York 10005
                                  Attention:  President

With a copy to:                   Curtis, Mallet-Prevost, Colt & Mosle LLP
                                  101 Park Avenue
                                  New York, New York 10178
                                  Attention:   Martin L. Forman, Esq.

(d)    By notice given as herein provided, the parties hereto and their respective successors and assigns shall have the right from time to time and at any time during the term of this Lease to change their respective addresses effective upon receipt by the other parties of such notice and each shall have the right to specify as its address any other address within the United States of America.

Rules of Construction.  Neither this Lease nor any provision hereof may be changed, waived, discharged or terminated except by an instrument in writing signed by the party to be charged.  All the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  Each term or provision of this Lease to be performed by Landlord or Tenant shall be construed as an independent covenant and condition. Time is of the essence with respect to the provisions of this Lease.

Counterparts.  This Lease may be executed in two or more counterparts, each of which shall constitute an original, but which, when taken together, shall constitute but one instrument and shall become effective as of the date hereof when copies hereof, which, when taken together, bear the signatures of each of the parties hereto shall have been signed.

Governing Law.  EXCEPT AS PROVIDED IN THIS SECTION 21.8, THIS LEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS EXECUTED AND PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES.

Non-Recourse as to Landlord.  Anything contained herein to the contrary notwithstanding, any claim based on or in respect of any liability of Landlord under this Lease shall be limited to actual damages and shall be enforced only against the Property and the rents and profits derived therefrom (including, without limitation, sales proceeds, insurance proceeds and condemnation awards) and not against any other assets, properties or funds of (a) Landlord, (b) any director, member, officer, general partner, limited partner, employee or agent of Landlord, or any general partners or shareholders of Landlord (or any legal representative, heir, estate, successor or assign of any thereof), or (c) any predecessor or successor partnership or corporation (or other entity) of Landlord, or any of its general partners, either directly or through Landlord or its general partners or any predecessor or successor partnership or corporation or their shareholders, officers, directors, employees or agents (or other entity), and any Person affiliated with any of the foregoing, or any director, officer, employee or agent of any thereof.

Tax Treatment; Reporting.  Landlord and Tenant each acknowledge that each shall treat this transaction as a true lease for state law purposes and shall report this transaction as a lease for Federal income tax purposes.  For Federal income tax purposes each shall report this Lease as a true lease with Landlord as the owner of the Property and Tenant as the Tenant of the Demised Premises including: (i) treating Landlord as the owner of the property eligible to claim depreciation deductions under Section 167 or 168 of the Internal Revenue Code of 1986 (the "Code") with respect to the Property (and any fixtures), (ii) Tenant reporting its Rent payments as rent expense under Section 162 of the Code (other than with respect to any portion of the Rent determined to be attributable to the improvements to be constructed pursuant to the Build to Suit Agreement, which may be reported as prepaid rent and deductible ratably over the remaining term of the Lease commencing with the date the improvements are placed in service), and (iii) Landlord reporting

the Rent payments as rental income.  For the avoidance of doubt, nothing in this Lease shall be deemed to constitute a guaranty, warranty or representation by either Landlord or Tenant as to the actual treatment of this transaction for state law purposes and for federal law purposes. Without limiting the generality of the foregoing, it is expressly agreed that the Tenant's trade equipment shall remain the property of Tenant.

General.  If any term or provision of this Lease or any application thereof shall be invalid or unenforceable, the remainder of this Lease and any other application of such term or provision shall not be affected thereby.  If any late charges provided for in any provision of this Lease are based upon a rate in excess of the maximum rate permitted by applicable law, the parties agree that such charges shall be fixed at the maximum permissible rate.  All the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties and their respective successors and assigns; provided, however, that (a) this Lease shall not inure to the benefit of any assignee pursuant to an assignment which violates or is inconsistent with the terms of this Lease and (b) neither this Lease nor any other agreement contemplated in this Lease shall be deemed to confer upon any Person not a party to this Lease any rights or remedies contained in this Lease. The headings in this Lease are for convenience of reference only and shall not limit or otherwise affect its meaning.

Landlord's Expenses.  In addition to the other provisions of this Lease, Tenant agrees and shall pay and/or reimburse Landlord's and its affiliates' reasonable costs and expenses, including, without limitation, the costs and expenses of reports and investigations and legal fees and expenses, incurred or resulting from or relating to (a) requests by Tenant for approval or consent under this Lease and all other documents executed between Landlord and Tenant in connection herewith, (b) any circumstances or developments which give rise to Landlord's right of consent or approval under this Lease or any Other Agreement, (c) circumstances resulting from any action or inaction by Tenant contrary to the lease provisions, (d) a request for changes, including, but not limited to, (i) the permitted use of the Demised Premises, (ii) alterations, improvements and to the leasehold improvements and monitoring any such alterations, improvements, (iii) subletting or assignment, and (iv) any other changes in the terms, conditions or provisions of this Lease, and (e) enforcement by Landlord of any of the provisions of this Lease.  Such expenses and fees shall be paid by Tenant within thirty (30) days of the submission of a statement for the same or such amount(s) shall become Monetary Obligations and if not paid when due shall accrue interest at the Interest Rate from the date payment shall have been due until paid in full.

Entire Agreement; Modifications.  This Lease, together with all exhibits, schedules and the other documents referred to herein, embody and constitute the entire understanding between the parties with respect to the transactions contemplated herein, and all prior to contemporaneous agreements, understandings, representations and statements (oral or written) are merged into this Lease. Neither this Lease, any exhibit or schedule attached hereto, nor any provision hereof or thereof may be modified or amended except by an instrument in writing signed by Landlord and Tenant.

Jurisdiction and Venue.    LANDLORD AND TENANT CONSENT TO PERSONAL JURISDICTION IN THE STATE OF NEW YORK.  EXCEPT AS PROVIDED IN THIS SECTION 21.15, THE PARTIES AGREE THAT ANY ACTION OR PROCEEDING ARISING FROM OR RELATED TO THIS LEASE SHALL BE BROUGHT AND TRIED EXCLUSIVELY IN THE STATE OR FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK.  EACH

OF THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT.   FURTHER, LANDLORD AND TENANT IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY CLAIM THAT SUCH SUIT, ACTION OR PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. SERVICE OF ANY PROCESS, SUMMONS, NOTICE OR DOCUMENT BY CERTIFIED MAIL ADDRESSED TO A PARTY AT THE ADDRESS DESIGNATED PURSUANT TO SECTION 21.5 SHALL BE EFFECTIVE SERVICE OF PROCESS AGAINST SUCH PARTY FOR ANY ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT.  A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT MAY BE ENFORCED IN ANY OTHER COURT TO WHOSE JURISDICTION ANY OF THE PARTIES IS OR MAY BE SUBJECT.

Compliance with Anti-Terrorism Laws.  Tenant will not, directly or indirectly, knowingly contract with, or allow the operation of any part of the Demised Premises to be used by, any person listed on the OFAC Lists.  Tenant shall immediately notify Landlord if Tenant has knowledge that Tenant or any of its principals or Affiliates is listed on the OFAC Lists or (a) is convicted on, (b) pleads *nolo contendere* to, (c) is indicted on, or (d) is arraigned and held over on charges involving money laundering or predicate crimes to money laundering.  Tenant will not, directly or indirectly (i) knowingly conduct any business or engage in any transaction or dealing with any Blocked Person, including, without limitation, the making or receiving of any contribution of funds, goods or services to or for the benefit of any Blocked Person, (ii) knowingly deal in, or otherwise engage in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224, any similar executive order or other Anti-Terrorism Law, or (iii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in Executive Order No. 13224, or other Anti-Terrorism Law.

Electronically Transmitted Signatures.  In order to expedite the execution of this Lease, telecopied signatures or signatures sent by electronic mail may be used in the place of original signatures on this Lease.  The parties intend to be bound by the signatures of the telecopied or electronically mailed signatures, and hereby waive any defenses to the enforcement of the terms of this Lease based on the form of the signature.  Following any facsimile or electronic mail transmittal, the party shall promptly deliver the original instrument by reputable overnight courier in accordance with the notice provisions of this Lease.

Memorandum of Lease.  Concurrently with the execution and delivery of this Lease, Landlord and Tenant shall execute, acknowledge and deliver a memorandum of this Lease, in the form attached and otherwise in proper form for recordation, together with such New York State and New York City transfer tax forms as may be required for Tenant to record the memorandum of this Lease in the Office of the City Register for New York County.  Thereafter Landlord and Tenant shall execute, acknowledge and deliver a memorandum of each modification of this Lease (in proper form for recordation), together with any required transfer tax or other forms required for recordation of the memorandum of this Lease.  Each such memorandum shall be in form and substance reasonably acceptable to Landlord and Tenant.  Tenant shall be responsible for recording each such memorandum, at Tenant's cost and expense.

23.
FAIR MARKET RENT

The term "Fair Market Rent" shall mean and be determined as follows:

23.1.    The "Fair Market Rent" for the Demised Premises shall be a determination made by Landlord and Tenant equal to one hundred (100%) percent of the fair market rental value as of the beginning of such rent period for space similar to the Demised Premises in comparable pre-war buildings, in comparable neighborhoods, and comparable locations situated within downtown Manhattan, based on the use of the Demised Premises as a "private club" (i.e., a social club similar to Tenant's current use)  and no other use, assuming that Tenant is accepting same in its then existing "as is" condition without any allowance, concessions or abatements, but taking into consideration the payment by Tenant of its proportionate share of Impositions and insurance, and taking into account all relevant factors applicable to a party renting such space on a renewal basis including the granting to Tenant of an improvement allowance and/or Landlord contribution for alterations and/or improvements to the Demised Premises (a "Fair Market Tenant Improvement Allowance") and an abatement of Basic Rent and Additional Charges typical for lease renewals (a "Fair Market Rent Abatement").  Any comparable rents used by either party to substantiate their determination of Fair Market Rent shall be based on "private club" use only.  Landlord shall give to Tenant written notice of Landlord's initial determination of the Fair Market Rent (the "Fair Market Rent Notice") on or before ninety (90) days prior to the date for the resetting or the Basic Rent.  Such initial determination of Fair Market Rent by Landlord shall be final and binding in fixing the Fair Market Rent for such rental period unless, within forty five (45) days after the date of Landlord's Fair Market Rent Notice, Landlord receive a written notice from Tenant objecting to Landlord's determination of the Fair Market Rent (the "Fair Market Rent Objection Notice"), (i) advising Landlord that Tenant disagrees with the initial determination of Fair Market Rent set forth in the Fair Market Rent Notice; and (ii) proposing a specific alternative Fair Market Rent, which shall have been determined in good faith by Tenant.

23.2.    If Landlord and Tenant shall fail to agree upon a final and binding Fair Market Rent within fifteen (15) days after Landlord's receipt of Tenant's Fair Market Rent Objection Notice, then Landlord and Tenant shall mutually designate an arbitrator whose determination of Fair Market Rent (which shall be either the Fair Market Rent proposed by Landlord in the Fair Market Rent Notice or the Fair Market Rent proposed by Tenant in the Fair Market Rent Objection Notice, but no other amount) shall be final and binding upon Landlord and Tenant.

23.3.    If Landlord and Tenant shall fail to agree upon the choice of such arbitrator within thirty (30) days after Landlord shall have received the Fair Market Rent Objection Notice, then either party may apply to the American Arbitration Association or any successor thereto having jurisdiction to designate an arbitrator.  The arbitrator shall be a licensed real estate broker or appraiser who is MAI certified by the Appraisal Institute and who shall have had at least ten (10) years' continuous experience in the business of leasing or managing similar office real estate or acting as an office real estate agent or office broker in the Borough of Manhattan, City of New York, except that such individual may

not have during the preceding five (5) years represented Landlord or Tenant as a broker, been employed by either Landlord or Tenant or represented Landlord or Tenant in the determination of fair market rental value.

23.4.    The arbitrator shall conduct such hearings and investigations as he may deem appropriate and shall, within thirty (30) days after his designation, determine which of the two (2) proposals shall be the Fair Market Rent, and that choice by the arbitrator shall be binding upon Landlord and Tenant, provided that the arbitrator shall not have the power to add to, modify, or change any of the provisions of the Lease.  Each party shall pay its own counsel fees and expenses, if any, in connection with any arbitration under this Article, and the parties shall share equally all other expenses and fees of any such arbitration.

23.5.    Promptly after the Fair Market Rent has been determined, Landlord and Tenant shall execute, acknowledge and deliver an agreement setting forth the Fair Market Rent for such rental period, as finally determined, provided that the failure of the parties to do so shall not affect their respective rights and obligations hereunder.

24.

## SUBJECT TO AGREEMENT OF THIRD PARTY OPERATOR

This lease shall not be effective until such time as the Landlord has entered into an agreement  with a third party operator mutually agreeable to both the Landlord and Tenant, who shall be responsible for running and maintaining the daily operation and provide services necessary for the Tenant. In the event the parties are unable to mutually agree to the choice of third party club operators and fails to come to an agreement with a third party club operator by no later than November 30, 2021, then this lease agreement shall be null and void.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties have executed this Lease as of the date above first written.

LANDLORD:

GREAT EMPIRE REALTY LLC


By:_____
Name:
Title:



TENANT:

DOWN TOWN ASSOCIATION


By:_____
Name:
Title:

<u>EXHIBIT A</u>

<u>DEMISED PREMISES</u>

[FLOOR PLAN TO BE ATTACHED]

**<u>RENT SCHEDULE</u>**

A-1

## OPTION 1 - TENANT PAYS UTILITIES, R/E TAXES, INSURANCE

| YEAR | GUARANTEED MINIMUM ANNUAL RENT (CLUB OPERATOR PLUS REVENUE SHARING AND DTA DUES) |
|------|------|
| 2022 | $    369,000.00 |
| 2023 | $    594,000.00 |
| 2024 | $    961,188.00 |
| 2025 | $ 1,189,547.00 |
| 2026 | $ 1,407,413.00 |
| 2027 | $ 1,525,816.00 |
| 2028 | $ 1,644,770.00 |
| 2029 | $ 1,764,293.00 |
| 2030 | $ 1,884,402.00 |
| 2031 | $ 2,505,114.00 |

## OPTION 2 - LANDLORD PAYS UTILITIES, R/E TAXES, INSURANCE

| YEAR | GUARANTEED MINIMUM ANNUAL RENT (CLUB OPERATOR PLUS REVENUE SHARING AND DTA DUES) |
|------|------|
| 2022 | $    875,000.00 |
| 2023 | $ 1,100,000.00 |
| 2024 | $ 1,467,188.00 |
| 2025 | $ 1,695,547.00 |
| 2026 | $ 1,913,413.00 |
| 2027 | $ 2,031,816.00 |
| 2028 | $ 2,150,770.00 |
| 2029 | $ 2,270,293.00 |
| 2030 | $ 2,390,402.00 |
| 2031 | $ 2,511,114.00 |