UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

DOWN TOWN ASSOCIATION, d/b/a
THE DOWN TOWN ASSOCIATION,

                              Debtor.
------------------------------------------------------------X

Chapter 11
Case No.: 21-10413 (DSJ)

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SUBCHAPTER V PLAN OF REORGANIZATION OF DOWN TOWN ASSOCIATION, d/b/a THE DOWN TOWN ASSOCIATION DATED JUNE 2, 2021

**WHEREAS**, Down Town Association, *d/b/a* The Down Town Association, debtor and debtor-in-possession (the "Debtor"), having filed the *Debtor's Chapter 11 Small Business Subchapter V Plan* [Dkt. No. 40] (the "Plan") attached hereto as Exhibit "A", and subsequently filed the *Debtor's Plan Supplement and Status Report* [Dkt. No 64] (the "Plan Supplement").

**THIS COURT HAVING**:

a.     set August 9, 2021 as the as the deadline for creditors to file objections to the confirmation of the Plan;

b.     set August 9, 2021 as the deadline for voting on the Plan;

c.     set August 12, 2021 at 10 a.m. as the date and time for commencement of the Confirmation Hearing in accordance with Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.     reviewed the Plan, all exhibits to the Plan, including the Plan Supplement, and the Ballot Summary, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation;

e.     noted that no objections were filed to Confirmation;

f.     noted that all creditors entitled to vote on the Plan who cast Ballots with respect to the Plan, voted in favor of the Plan;

g.     held the Confirmation Hearing;

h.      heard the statements and arguments made by counsel and other parties with respect to Confirmation including the support of the Subchapter V Trustee for confirmation of the Plan and entry of this Confirmation Order;

i.      considered all testimony, documents, filings, and other evidence presented or admitted at the Confirmation Hearing;

j.      taken judicial notice of all papers and pleadings filed in this Chapter 11 Case; and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of this Chapter 11 Case;

k.      for the reasons stated by the Court at the Confirmation Hearing, overruled any and all objections or reservations of rights to the Plan; and

l.      entered rulings on the record at the Confirmation Hearing held on August 12, 2021.

**NOW THEREFORE**, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Court having found the record of this Chapter 11 Case and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

1.      The findings of fact and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation

2

Order to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such. To the extent any finding of fact or conclusion of law set forth herein (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of the Court, it is adopted as such.

2.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). The Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction to enter a Final Order determining that the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and approved. Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

3.      **Eligibility for Relief**. The Debtor is an entity eligible for relief under section 109 of the Bankruptcy Code.

4.      **Judicial Notice**. The Court takes judicial notice (and deems into evidence for Confirmation) the docket of this Chapter 11 Case maintained by the Clerk of the Court or its duly appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of this Chapter 11 Case.

5.      **Transmittal and Mailing of Materials; Notice**. The Debtor provided due, adequate, and sufficient notice of the Plan, the Confirmation Hearing, and the time fixed for filing objections to plan confirmation to all entities entitled to receive that notice, including all of the Debtor's known creditors. That notice fully and adequately described the requested relief, was

reasonable and appropriate, and complied in all regards with due process. That notice also complied with the applicable provisions of: (a) the Bankruptcy Code; (b) the Bankruptcy Rules; (c) the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York; and (d) all relevant orders of the Court.

6.      **Solicitation.** The Debtor conducted its solicitation of acceptances or rejections of the Plan and the related distribution and tabulation of ballots with respect to that solicitation in good faith. In addition, the solicitation, distribution, and tabulation complied with the Scheduling Order, all applicable provisions of the Bankruptcy Rules, all applicable provisions of the Bankruptcy Code, and all other applicable laws, rules, and regulations. Among other things, the Debtor transmitted the Plan to all known Persons who hold claims or interests and that are impaired under the Plan and who are therefore entitled to vote on the Plan.

7.      **Ballot Summary.** As evidenced in the Ballot Summary, the procedures used to tabulate ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations. As evidenced by the Ballot Summary, Class 1: Nontax Priority Claim, Class 2: General Unsecured Claims—the Impaired Classes under the Plan—voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Based on the foregoing, and as evidenced by the Ballot Summary, the Impaired Classes of Claims have voted to accept the Plan in accordance with the requirements of sections 1124, 1126 and 1191 of the Bankruptcy Code.

8.      **Consensual Plan**. As evidenced by the Ballot Summary, the Plan has been accepted by the Classes of Creditors entitled to vote on the Plan. Accordingly, the Plan is a consensual Plan under Section 1191(a) of the Bankruptcy Code.

9.      **Objections.** To the extent that any objections, reservations of rights, statements

with respect to Confirmation were made on the record at the Confirmation Hearing or prior to the entry of this Confirmation Order, they are hereby overruled on the merits based on the record before this Court.

10. **Burden of Proof.** The Debtor, as proponent of the Plan, has met its burden of proving all of the requirements of a consensual plan under section 1191(a), including each required element of section 1129 of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Further, the Debtor has proven each required element of section 1129 of the Bankruptcy Code by clear and convincing evidence.

11. **Compliance with the Requirements of Section 1129 of the Bankruptcy Code.** The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code

12. Compliance with other applicable requirements of Section 1123 of the Bankruptcy Code. The Plan complies with all applicable additional provisions of section 1123 of the Bankruptcy Code.

## <u>ORDER</u>

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

13. The Plan is **CONFIRMED** as a consensual plan under Section 1191(a) of the Bankruptcy Code, and the Plan is incorporated into and annexed to this Confirmation Order as an exhibit. In the event of any inconsistency between the Plan and the provisions of this Confirmation Order, the provisions of this Confirmation Order are controlling.

14. The provisions of the confirmed Plan and this Confirmation Order bind the Debtor, the Reorganized Debtor, and all creditors and parties in interest.

15. The Plan is modified to pay the Union's claim which is increased by $13,513.34, so that the payment shall be paid in equal quarterly installments of $19,797.09 for three (3) years

from the Effective Date commencing on the Distribution Date.

16.     The Debtor or the Reorganized Debtor, as the case may be, is authorized to execute and deliver any and all documents or instruments and take any and all actions necessary or desirable to implement the Plan, this Confirmation Order, and any other transactions contemplated under those documents. To effectuate these transactions and the Plan, the Debtor or Reorganized Debtor, as the case may be, is authorized—without further notice or application to or order of this Court—to execute, deliver, file, or record any documents and to take any other actions that it may determine is necessary or desirable to implement the Plan and this Confirmation Order, regardless of whether such actions or documents are specifically referred to in the Plan or this Confirmation Order. To the extent that, under applicable nonbankruptcy law, any of these actions otherwise would require the consent or approval of the shareholder of the Debtor or Reorganized Debtor, this Confirmation Order constitutes that consent and approval.

17.     On and after the Effective Date, the Debtor, the Reorganized Debtor, and the Debtor's current officers, directors, managers, and professionals employed in the Estate shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, the Reorganized Debtor, and any Persons seeking to exercise the rights of the foregoing, from any and all claims, obligations, rights, suits, judgments, damages, demands, debts, rights, causes of action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, its Estate, or the Reorganized Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, its Estate, the Reorganized Debtor, or its affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any

6

Claim or Interest or other Persons, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, its Estate, the formation, operation, and conduct of the Debtor's business, this Chapter 11 Case, the negotiation, formulation, or preparation thereof, the solicitation of votes on the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable federal or state law, including any preference or fraudulent transfer Claims or causes of action; provided that nothing in this release shall be construed to release any post-Effective Date obligations of any Persons under the Plan.

18.     Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court will retain jurisdiction over the Chapter 11 Case, all matters arising out of or related to the Chapter 11 Case and the Plan.

19.     The Reorganized Debtor shall mail a notice of the entry of this Confirmation Order and of the occurrence of the Effective Date to all creditors of record.

20.     Notwithstanding any Bankruptcy Rule (including, without limitations, Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, and 9014), this Confirmation Order is effective immediately upon entry and not subject to any stay.

21.     This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

Dated: New York, New York
         August 23, 2021

                                        _____*s/ David S. Jones*_____
                                        Honorable David S. Jones
                                        United States Bankruptcy Judge

# EXHIBIT

# "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

**DOWN TOWN ASSOCIATION d/b/a**
**THE DOWN TOWN ASSOCIATION**

　　　　　　　　　　　　　　Debtor.

Chapter 11
Case No.: 21-10413-dsj
(Subchapter V)

### DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION UNDER <u>SUBCHAPTER V OF TITLE 11, UNITED STATES CODE</u>

Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.
Law Offices of Avrum J. Rosen, PLLC
38 New Street, Huntington, New York 11743
T: 631-423-8527
arosen@ajrlawny.com
npizzo@ajrlawny.com

*Counsel to the Debtor and Debtor-in-Possession*

Dated: June 2, 2021

## DEFINITIONS

The following terms have the respective meanings specified below, except as expressly provided in other sections of the Plan, unless the context otherwise requires(such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**60 Pine Street:** The real property and the Debtor's leased principal place of business located at 60 Pine Street, New York, New York 10005.

**70 Pine Street:** The first and second floors of the hotel located at 70 Pine Street, New York, New York 10005, which was leased by the Debtor pre-petition and said lease was terminated pre-petition

**Administrative Claim**: A Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**Administrative Claims Bar Date**: For all Administrative Claims exceptProfessional Fee Claims, the first business day that is 15 days following the EffectiveDate, unless the Bankruptcy Court has entered an order setting an earlier Administrative Claims Bar Date.

**Allowed**: Means, with respect to any Claim, against the Debtor, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules (as suchSchedules may be amended from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim as to which noobjection has been or is interposed in accordance with the Plan or such otherapplicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules,the Local Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan "Allowed Administrative Expense Claim" or "AllowedClaim" shall not, for any purpose under the Plan, include interest on such Claim fromand after the Petition Date, (d) any Claim or any portion thereof that theDebtor has assented to the validity of or that has been expressly allowed under the Plan or (e) that is agreed to by the Debtor or Reorganized Debtor and the holder of such Claim.

**Allowed […] Claim**: An Allowed Claim in the particular Class or category specified.

**Bankruptcy Code**: Title 11 of the United States Code as of the Petition Date.

**Bankruptcy Court**: The United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Case or in the event such court ceases to exercise jurisdiction over this Chapter 11 Case, any other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

**Bar Date**: The date fixed by order of the Bankruptcy Court as the date by which all proofs of claim with the exception of those asserted by governmental entities (as defined in the Bankruptcy Code) were required to be filed against the Debtor.

**Business Day**: Any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

**Cash**: Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

**Chapter 11 Case**: The case under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 21-10413-dsj.

**Claim**: A claim against the Debtor or its property as defined in Bankruptcy Code § 101(5).

**Claimant**: An entity that holds a Claim against the Debtor that arose at the time of or before the Petition Date, or an entity that has a Claim against the Bankruptcy Estate of a kind specified in Bankruptcy Code §§ 348(d), 502(f), 502(g), 502(h), or 502(i).

**Claim Objection Deadline**: The first Business Day that is 180 days after the Effective Date.

**Claims Reconciliation Process**: The process to reconcile all Claims asserted against the Debtor with the Debtor's books and records, including any objections to Claims filed by the Debtor, which the Debtor will commence within thirty (30) days after the Bar Date.

**Class**: A category consisting of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category, as designated in Article V of the Plan pursuant to Bankruptcy Code § 1122.

**Class 2 Distribution Amount**: In the event that the Plan is confirmed consensually the Plan is a "pot plan," meaning that a sum will be available to Holders of General Unsecured Claims, each of whom will receive a pro rata distribution from the "pot" that is estimated to be approximately a total of approximately $240,000.00 over a period of three (3) years after the Effective Date. The exact amount will depend primarily on the Debtor's Objections to Claims. In the event the Plan is not consensual, The Sub Chapter V Trustee will remain in place after Confirmation and will superviser the Post –Confirmation Debtor's operatins and will collect and distribute all disposable income to Allowed Claims.

**Club Employees' Pension Fund:** The multi-employer pension fund that the Debtor is a member of pursuant to its CBA with the Hotel, Restaurant and Club Employees & Bartenders Union, Local 6, UNITE HERE.

**CBA:** The collective bargaining agreement in effect between the Debtor and the Hotel, Restaurant and Club Employees & Bartenders Union, Local 6, UNITE HERE, as to the Petition Date

**CBA Settlement Agreement**. The settlement agreement with the Hotel, Restaurant and Club Employees & Bartenders Union, Local 6, UNITE HERE. and the Club Employees Pension Fund, which will be brought before the Court for approval, which resolves all disputes and claims between the parties and terminates the CBA.

**Confirmation Date**: The date the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**Confirmation Hearing**: The hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order**: The order confirming the Plan in accordance with the provisions of the Bankruptcy Code.

**Counsel for the Debtor**: Avrum J. Rosen, Esq., Nico G. Pizzo, Esq., the Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York, 11743, T: 631-423-5827, arosen@ajrlawny.com, npizzo@ajrlawny.com

**Cure**: The payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract, (including the CBA) or Unexpired Lease of the Debtor and to permit the Debtor to assume that contract or lease under § 365(a) of the Bankruptcy Code.

**Debtor**: Down Town Association d/b/a The Down Town Association

**Debtor-in-Possession**: The Debtor, during the period commencing on the Petition Date and ending on the Effective Date.

**Disallowed**: A Claim as to which a Final Order has been entered disallowing the Claim or a portion thereof.

**Disputed**: Means, as to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest that is not an Allowed Claim or Interest and (a) is listed on the Schedules as disputed, unliquidated, or contingent, (b) is filed pursuant to Bankruptcy Code § 501(a) as unliquidated or contingent, or (c) as to which the Debtor or any party in interest with standing, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules that has not been determined by Final Order.

**Distribution**: A payment to the Holder of an Allowed Claim.

**Distribution Date**: A date on which a Distribution occurs, which shall be thirty (30) days after the

Effective Date and quarterly thereafter, for a total period of three (3) years.

**DTA.** The Down Town Association d/b/a The Down Town Association, the Debtor, a not-for-profit corporation organized under the laws of the State of New York.

**EBRA 70 Pine Owner LLC**: EBRA 70 Pine Owner LLC was the Debtor's landlord of the real property 70 Pine Street, New York, New York 10005 and has filed a lease rejection claim in the amount of $18,000,000.00. The Debtor asserts that Claim is capped bt 11 U.S.C. §502 (b)(6)(A) to an amount of not more than $2,551,840.00, and will be objecting to that claim.

**Effective Date**: The later of either September 1, 2021 or the date on which this Plan shall take effect, which date shall be aBusiness Day on or after the Confirmation Date on which all conditions precedent tothe effectiveness of this Plan specified in Article XIII, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Reorganized Debtor with the Bankruptcy Court.

**Estate**: The bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

**Exculpated Parties**: Each of the following solely in their capacity as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's and Reorganized Debtor's directors, officers, employees, advisors, and agents, (d) the Chapter V Trustee and (e) the Professionals involved in this Chapter 11 Case and the negotiation, implementation, and execution of the Plan and the PSA.

**Executory Contract**: Any contract or (CBA) to which the Debtor is a party that is subject to assumption or rejection under sections 365, 1113 or 1123 of the Bankruptcy Code.

**Final Decree**: An order entered by the Bankruptcy Court closing the Chapter 11 Case.

**Final Order**: An order as to which the time to appeal, petition for *certiorari*, or movefor re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall havebeen affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired; *provided, however*, the possibility that a motion underRule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule underthe Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

**General Unsecured Claim**: Any Claim against the Debtor existing as of the Petition Date other than a Secured Claim, Administrative Claim, Priority Tax Claim or Other Priority Claim.

**Governmental Bar Date**: August 31, 2021 at 5 p.m. ET, the last day upon which governmental entities may file proofs of claim.

**Great Empire Realty LLC**: Great Empire Realty LLC is the Debtor's landlord of the real property

60 Pine Street, New York, New York 10005. And also holds Great Empire Unsecured Claim on a promissory note for a total claim of pre-petition rent and the amount due on the note in the filed amount of $6,060,297.00, and will enter into a revised lease with the Debtor and waive a portion of its claim as well as waiving a portion of its Cure Amount.

**Holder**: A Person holding a Claim or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

**Impaired**: Means impaired within the meaning of sections 1124 and 1191 of the Bankruptcy Code.

**Initial Distribution Date**: Thirty (30) days after the Effective Date.

**Insider**: Insider shall have the meaning ascribed to it in Bankruptcy Code § 101(31).

**Insurance Policy**: Any issued policy of insurance and any agreements relating thereto covering the Debtor, the Debtor's Estate, or its assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against the Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrellaor excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary, and organization liability policy(ies) (A, B, or C coverage), and any tail with respect thereto.

**Liquidation Value**: The amount realizable if the Debtor's assets were sold and liquidated under Chapter 7 of the Bankruptcy Code.

**Notice Parties**: Counsel to the Debtor, the Subchapter V Trustee, and the U.S. Trustee and any creditor or party in interest that has appeared in this Case

**Person**: An individual, corporation, partnership, limited liability company (includingits members), joint venture, trust, estate, unincorporated association, unincorporatedorganization, governmental entity, or political subdivision thereof, or any other entity

**Petition Date**: March 4, 20210, the date upon which the Debtor filed its voluntaryChapter 11 bankruptcy petition.

**Plan**: This plan and all exhibits hereto, either in its present form or as may be altered, amended, modified, or supplemented from time to time proposed by the Debtor pursuant to Sections 1190, 1191, and 1129 of the Bankruptcy Code and the Bankruptcy Rules.

**Plan Supplement**: Any supplement to this Plan and/or any Exhibits thereto to be filed by the Debtor as permitted herein on or before the Plan Supplement Filing Date.

**Plan Supplement Filing Date**: The date on which the Plan Supplement is filed, which shall be fourteen (14) days prior to the date set by the Court for the Confirmation Hearing.

**Priority Claims**: All Priority Non-Tax Claims and Priority Tax Claims.

**Priority Non-Tax Claims**: Those claims afforded priority under Bankruptcy Code § 507(a) other than Administrative Claims and Priority Tax Claims including the severance claim under the CBA.

**Priority Tax Claims**: Those claims afforded priority under Bankruptcy Code §§ 502(i) or 507(a)(8).

**Pro Rata Share**: The proportionate share of a distribution calculated by dividing proportionately among the Allowed Claims in a Class according to the aggregate amount of the Allowed Claims in such Class and the total amount of any Distribution to be made to that Class.

**Professional**: Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327, 1103, and/or 1106 and to be compensated for services rendered prior to the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330, and/or 331; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code §§ 330 and 503(b)(2).

**Professional Fee Bar Date**: The first Business Day that is 30 days after the Effective Date.

**Professional Fee Claim**: To the extent Allowed pursuant to a Final Order of the Bankruptcy Court, (a) a claim under Bankruptcy Code §§ 327, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estate's behalf; by a Professional, which, for this purpose include the Subchapter V Trustee and (b) a claim under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered.

**Released Parties**: (a) the Debtor and the Debtor's Estate; , and (b) with respect to the entities or persons identified in subsections (a), each of such entities' or persons' respective predecessors, successors, and assigns, and respective current and former affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, , members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

**Releasing Parties**: All Persons who have held, hold, or may hold Claims, Rights of Action, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Plan or are otherwise discharged, satisfied, stayed, or terminated pursuant to the Plan.

**Reorganized Debtor**: The Debtor upon and after the Effective Date of this Plan.

**Rights of Action**: Any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's contract rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

**Schedules**: The Debtor's schedules of assets and liabilities, statements of financial affairs, and such other schedules in accordance with Bankruptcy Code § 521 filed by the Debtor with the Bankruptcy Court, as amended. [Dkt. Nos. 1 and 19].

**Subchapter V Trustee**: Nat Wasserstein, the trustee appointed by the U.S. Trustee under Section 1183(a) of the Bankruptcy Code, Lindenwood Associates, LLC, 328 N Broadway, Nyack, NY 10960, T: 845-398-9825, nat@nswasserstein.com.

**Union** Collectively, the Hotel, Restaurant and Club Employees & Bartenders Union, Local 6, UNITE HERE. and the Club Employees' Pension Fund,

**Unsecured Claim**: Any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Non-Tax Claim.

**U.S. Trustee**: The Office of the United States Trustee for the Southern District of New York; U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, T: 212-510-0500 F: 212-668-2256.

**Unexpired Lease**: A lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired**: Means, with respect to a Class of Claims or Interests, such Class is not Impaired.

**Voting Deadline**: The date by which a Claimant must deliver a ballot to accept or reject this Plan relating to the solicitation of votes with respect to this Plan.

## RULES OF INTERPRETATION AND CONSTRUCTION

**Generally**. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

**Time Periods**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**Miscellaneous Rules**. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## INTRODUCTION

DTA, a/k/a Down Town Association, d/b/a The Down Town Association, Debtor and Debtor-in-Possession, proposes the following Chapter 11 Plan of Reorganization.

In accordance with Section 1190 of the Bankruptcy Code, this Plan includes (a) a brief history of the business operations of the Debtor, (b) a liquidation analysis, and (c) projections with respect to the ability of the Debtor to make payments under thePlan.

This Plan is a contract between the Debtor and all of its creditor constituencies.It provides the mechanism, timing, and details of all treatment and payment of creditor claims. It is the blueprint for the Debtor's emergence from bankruptcy as a stronger and viable entity. The information contained in this document is designed to provide creditors and interest holders of the Debtor with information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and emerge from bankruptcy. **If the Bankruptcy Court confirms the Plan, it will be binding on the Debtor, its creditors, and other interested parties.**

This Plan provides for a comprehensive reorganization of the Debtor to preserve its going concern value and future business. Under this Plan, the Debtor will (i) pay all of its Administrative in full on the Effective Date of the Planand (ii)  pay Allowed Priority Tax Claims  pursuant to the time permitted  in 11 U.S.C. §507 (a)(8) together with statutory Interest, (iii) pay other Priority Claims pursuant to the CBA Settlement and (iv) make distributions to each of its Allowed General Unsecured Creditors over three years with quarterly distributions of its disposable income.in the estimated approximate amount of   %of each Allowed General Unsecured Creditor's Claim.

The Debtor believes this Plan satisfies the primary goal of Chapter 11, which is to enable the Debtor to reorganize, restructure, and emerge as a productive business. The Debtor submits that this Plan will accomplish these goals and that

Confirmation of the Plan will provide the best possible return to Holders of Claims and is in the best interests of the Debtor, its Creditors, and members.

## ACCORDINGLY, THE DEBTOR STRONGLY URGES YOU TO VOTE IN FAVOR OF THIS PLAN.

## THE PLAN CONFIRMATION HEARING

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing willbe held on **July ___, 2021 at 10 a.m. ET**. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at anysubsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specifyin detail the name and address of the objecting party, all grounds for the objection, and the amount of the claim held by the objecting party. Any objection must be filedwith the Bankruptcy Court and served so that it is received by the Bankruptcy Court,the U.S. Trustee, the Subchapter V Trustee, and Counsel for the Debtor on or before **July __, 2021**. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a Creditor or Interest Holder to timely file an objection to the Plan or timely cast a ballot in accordance with the Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Plan.

Any interested party desiring further information about the Plan should contact Debtor's Counsel.

## I.

## BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor is a New York Not-For-Profit Corporation formed and existing under the laws of the State of New York. The Debtor operates as a member owned social club dedicated to providing its members and guests with the finest hospitality. Historically, the Debtor was the first club established in Lower Manhattan in 1860 and is the fifth oldest club in New York. The Debtor's principal location is located at 60 Pine Street, New York, New York 10005.

Prior to the filing of the petition, on August 6, 2018, the Debtor conveyed its sole real property, commonly known as 60 Pine Street to Great Empire Realty LLC for the purchase price of Twenty-Eight Million Two Hundred and Eighty Thousand Dollars ($28,280,000.00) because the Debtor had been operating at a loss for several years and was out of operating capital. Thereafter, the Debtor and Great Empire Realty LLC executed a lease agreement for a period of approximately forty-nine years to permit the Debtor to continue occupancy of 60 Pine Street.  As part of that sale, Great Empire Realty LLC also provided the Debtor with a credit line on an unsecured basis of Four Million Dollars ($4,000,000.00) to fund operations pending the construction of additional floors to the building and the renovation of the club including the Roof and the HVAC system.

### B.    The Debtor's Business Model

The Debtor is not-for-profit member owned social club. It collected membership dues from each member on an annual basis and initiation fees on a sliding scale from new members.  The members' dues are valued differently depending on the members standing with the Debtor and the location of the members primary residence.  Pre-petition, the Debtor also ran a full kitchen and adjacent hotel rooms for its own events and had outside groups rent the space for events.

The operations of the Debtor were severely hampered by a drop in membership caused by the conditions at the building which needed repairs and a change in the tax laws.  As a result, the food service operations created large operating losses. Just prior to the pandemic, the Debtor decided to cease operations at the premises at 60 Pine Street until the needed repairs were needed and sold off most of its personal property and kitchen equipment.  It also surrendered its space a t 70 Pine Street, which consisted of hotel rooms. The Debtor then entered into a temporary agreement with The Players, another social club located near Gramercy Park.

As of the Petition Date, the Debtor does not collect members' fees or dues for its own

benefit, because of its agreement with The Players, Pursuant to its agreement with The Players, members of the Debtor in good standing were assigned a "Players DTA Membership" which permitted them access to almost all of the benefits of The Players membership. For the most part, dues were paid directly to The Players by those members availing themselves to the benefits of that membership.

C.    **The Debtor's Prepetition Debt Structure**

The Debtor has no secured debt. The Debtor's cash flow needs have historically been managed through the collection of membership dues and fees and the above-described income. As of the Petition Date, The Debtor's total liabilities were approximately Six Million Nine Hundred Thirty-Five Three Hundred Thirty Dollars and Ninety-Four Cents ($6,935,330.94).

D.    **Events Leading to the Commencement of the Chapter 11 Case**

In years leading up to the Petition Date, the Debtor experienced a slow decline in new memberships. Although there are many factors attributing to the decline, one of the more prominent factors was the delay in constructing expected in begin after the sale of 60 Pine Street. Great Empire Realty LLC was supposed to begin construction soon after the sale of 60 Pine Street, but failed to do so. Due to the delay in commencing the construction at 60 Pine Street, the Debtor was running out of operating capital. Given the revenue shortfall and the fact that the Debtor's members would not have access to 60 Pine Street when the construction began, the Debtor entered into an agreement with The Players, to permit the Debtor's members access to the accommodations at The Players location.

Due to the above factors and the National Covid-19 Emergency, which deterred many members from visiting 60 Pine Street, the Debtor ceased its operations and laid off its employees. In addition to the leased premises of 60 Pine Street, Debtor leased one floor and part of the elevator lobby of the condominium commonly known as 70 Pine Street, New York, New York 10003, for the use of multiple hotel rooms for its members and guests. Due to lower-than-expected occupancy and revenues, Debtor attempted to negotiate a new financial arrangement with the landlord of 70 Pine Street, EBRA 70 Pine Owner LLC. This effort was unsuccessful and due to the emergence of COVID-19, occupancy collapsed in early 2020. The Debtor vacated the Premises at the end of February 2020. Pursuant to termination notice, the lease was effectively terminated as of November 10, 2020.

Part of the Debtor's business was operating and servicing a kitchen and bar for its members to purchase food and beverage at certain times of the day, as well as renting out its facilities for functions to other parties. Additionally, the Debtor would rent certain rooms of 60 Pine Street to members, guests and certain business to host events at its location and offer catering services for the same. Prior to closing its operations, the Debtor had nineteen (19) union and two (2) non-union employees. The Debtor's operations remain closed. There were pending demands for arbitration from the Hotel, Restaurant & Club Employees and Bartenders Union, Local 6, UNITE HERE seeking Severance for the laid off workers as well as open audits for prior years and potential pension withdrawal claims in an unliquidated amount.

Consequently, Debtor filed for bankruptcy relief in order to restructure its debt and operations in advance of a return to "normal" upon the full reopening post-pandemic. Debtor's

intention on filing was to use chapter 11 to confirm a plan, allowing it to shed burdensome leases and debt, exiting the bankruptcy as a refined social club without the burden of operating a full dining staff, bar or catering facility and focusing on membership retention.

## II.

## EVENTS DURING THE CHAPTER 11 CASE

### A.   Commencement of the Case

On March 4, 2021, the Debtor filed its voluntary Petition under chapter 11of the Bankruptcy Code and elected to proceed under Subchapter V as a "small business debtor." Since then, the Debtor has been operating as Debtor-in-Possession.On March 5, 2021, the United States Trustee appointed Nat Wasserstein as the Subchapter V Trustee.

As described in detail in the Declaration of Mark R. Altherr, Pursuant to LocalBankruptcy Rule 1007-2 and in Support of Chapter 11 Petition [Dkt. No. 2], the Debtor filed for relief under Chapter 11 to preserve the going concern of this historic social club and protect the interests of the Debtor's creditors so that it could quickly emerge from Chapter 11 as a stronger and well positioned social club.

On March 4, 2021, along with the Petition. the Debtor filed its Schedules and Statement of Financial Affairs, a series of documents where the Company lists all of its assets and liabilities, including, inventory, leases, contracts, obligations, debts, creditors, equity holders, litigations, and liabilities and certain other financial and operational material to provide Creditors and the Bankruptcy Court with a snapshot of the entire financial picture and circumstances on the day the Chapter 11 Case was filed. [Dkt. No. 1],

### B.   Other Relief Requested and Obtained

During the course of this Chapter 11 Case, the Debtor sought and the Bankruptcy Court granted the following additional relief to facilitate the smooth operations of the Debtor during this Chapter 11 Case:

i.    *Order (i) Authorizing the retention of PFK O'Conner Davies, LLP as accountants to the Debtor, effective as of March 26, 2021 and (iii) Granting Related Relief* [Dkt. No. 29].

ii.   *Order (i) Authorizing the retention of the Law Offices of Avrum J. Rosen, PLLC as counsel to the Debtor, effective as of March 4, 2021 and (iii) GrantingRelated Relief* [Dkt. No. 34],

iii.  *Order Establishing Bar Dates for Filing Claims, and Approving the Form andManner of Notice Thereof. In this order, the Bankruptcy Court has been askedto set May 24, 2021, as the last date for the filing of creditor proofs of claimagainst the Debtor and August 31, 2021 as the last date for governmental units to file proofs of claim against the Debtor.* [Dkt. No. 35].

C.    **Right Sizing of the Debtor's Lease Portfolio**

i.    *70 Pine Non-Residential Real Property Lease Rejection Motion*

Prior to the Petition Date, specifically on December 30, 2014, the Debtor entered into a lease (the "70 Pine Lease") with EBRA 70 Pine Owner, LLC. The terms of the 70 Pine Lease provided that the Debtor has the right to occupy the first-floor elevator lobby and second floor of the premises commonly known as 70 Pine Street Condominiums known by the street address of 70 Pine Street, New York, New York 10005. Despite the fact that the 70 Pine Street is known as condominiums, the Debtor used the rentable space on the second floor as multiple hotel rooms for the stay of its members and guests.

Due to lower-than-expected occupancy and revenues, the Debtor attempted to negotiate a new financial arrangement with the Landlord of 70 Pine Street. This effort was unsuccessful and due to the emergence of COVID-19, occupancy declined sharply in early 2020. The Debtor closed the hotel rooms as of February 28, 2020, and surrendered possession of the Premises. Upon information and belief, the Landlord immediately took possession.

On March 12, 2021, the Debtor filed a motion seeking, *inter alia*, an order to reject the unexpired non-residential real property lease at 70 Pine Street. After notice and a hearing, the Court entered an Order Denying the Portion of the Debtors' Motion Seeking to Reject its Unexpired Lease of Non-Residential Real Property at 70 Pine Street as it Terminated on November 10, 2020 [Dkt. No. 36].   EBRA 70 Pine Owner Corp. filed Claim No. 11 with a lease rejection claim of $18,756,726.89, which appears to consist of the pre-petition arrears as well as the entire remainder of the long-term lease, reduced to present value.   In its proof of claim, it states that this amount applies if 11 U.S.C. § 502 (b)(6)(A) does not apply.  However, it gives no reason why that section does not apply.  The Debtor intends to object to that claim and believes that claim is, at most, $2,551,840, which is three (3) years of the rent under the lease from the date of termination of the lease.

ii.    *Pitney Bowes Postage and Ricoh Copier Lease Rejection Motion*

Prior to the Petition Date, specifically on January 26, 2017, the Debtor entered into a lease with Pitney Bowes, Inc. The terms of the Postage Lease permitted the Debtor to possess and use equipment referenced in the Postage Lease as a SeriesPro P Series together with its accessories, attachments, replacements and embedded software. On March 12, 2021, the Debtor filed a motion seeking, *inter alia*, an order to reject the executory contract of the personal property known as the Pitney Bowes Postage Meter with Pitney Bowes Inc.

Similarly, prior to the Petition Date, the Debtor entered into a lease with Wells Fargo Financial Leasing, Inc., to possess and use three (3) copiers referenced in the Ricoh Copier Lease. On March 12, 2021, the Debtor filed a motion seeking, *inter alia*, an order to reject the executory contract of the personal property known as the three Ricoh copiers with Wells Fargo Financial Leasing, Inc.

By Order Dated, April 16, 2021, the Court authorized the Debtor to Reject Two Executory Contracts between the Debtor and Pitney Bowes Inc. and also between the Debtor and

Wells Fargo Financial Leasing, Inc.

### iii.    *Remaining Lease with Great Empire Realty, LLC*

The Lease with Great Empire Realty, LLC is being modified and assumed. Please see the discussion in the section on Implementation of the Plan.

### iv    *Settlement with the Union*

The Debtor and the Union have entered into extensive negotiations over the status of the CBA and the amount and type of the claims in this case.  The Union asserted that the CBA was still in existence and would be binding on any subsequent operator of the premises.  The Union also asserted that the severance claim was a total of $224,051.75, at least $108,192.71 of which was a priority claim due upon Confirmation.  In addition, due to the impact of the pandemic on other members of the multi-employer pension plan, the withdrawal claim had skyrocketed from a pre-petition estimate of about $45,000.00 to $452,359.00. Lastly, there was an ongoing audit, wherein the Union asserted a claim for at least $81,319.54 and was seeking to audit several additional years of payments as well.  These amounts were disputed by the Debtor.  The options facing the Debtor were to commence a costly and expensive motion pursuant to 11 U.S.C. §1113 to terminate the CBA.  Moreover, it was clear that the Debtor would not have the funds to pay the priority claim in full on Confirmation.

As a result, the Debtor and the Union have negotiated the CBA Settlement, which will be filed with the Court for approval pursuant to F.R.B.P. 9019 and will be incorporated into the Plan wherein the CBA will be terminated, with the *proviso* that it will be deemed to be in effect if the Reorganized Debtor re-engages in any of the activates covered by the CBA.  In addition, the Union's Severance Claim will be Allowed as an Allowed Priority Claim in the full amount of $224,051.75, and shall be paid out in quarterly distributions over the three (3) years of the Plan. The balance of the Unions' claims will be Allowed as filed.

### D.    Administrative Reporting and Obligations

Operating in Chapter 11 requires the Debtor to make various periodic reportsand filing. The Debtor is current on their reporting obligations with the U.S. Trustee(through end of May 2021). The Debtor is also obligated to file various reports with the Bankruptcy Court regarding its progress to a Plan and discussions with theSubchapter V Trustee. The Debtor has satisfied all of these obligations.

## III.

## THE CHAPTER 11 PLAN PROCESS AND CONFIRMATION REQUIREMENTS IN A SUBCHAPTER V CASE

The end game of this Chapter 11 Case is the confirmation of the Debtor's Plan.In order to provide Creditors with sufficient information to analyze the Plan, this document contains a balance sheet analysis, projections, valuations, and a liquidation analysis.

In order for a Bankruptcy Court to confirm the Plan, under Sections 1129, 1190, and 1191

of the Bankruptcy Code, the Bankruptcy Court must:

i.    *find that the Plan satisfies the "best interest of creditors test"—meaning that creditors will receive more under the Plan than they would get if the Debtor andits assets were liquidated under Chapter 7 of the Bankruptcy Code,*

ii.    *find that the Plan is "Fair and Equitable"—meaning that the Plan must providedistributions to creditors greater than the liquidation value of the Debtor's Estate and no less than the projected "Disposable Income" of the Debtor, as defined in Section 1191(d) of the Bankruptcy Code over a certain commitment period, and*

iii.    *find that the Reorganized Debtor will be, or is reasonably likely to be, able to make the payments it promises to make under the Plan.*

## A.    Liquidation Analysis

Bankruptcy Code § 1129(a)(7) requires that in order for this Plan to beconfirmed, each creditor must either have voted to accept this Plan (or be deemed tohave accepted this Plan), or this Plan must provide for each creditor to receive at leastas much as it would as of the Effective Date if the Debtor were liquidated under Chapter 7 on such date.

A liquidation analysis prepared by the Debtor with the assistance of its counsel is set forth in **Exhibit A** to this Plan. The liquidation analysis provides alisting and analysis of all of the Debtor's assets and liabilities. The Debtor and its advisors have concluded that a liquidation of the Debtor's assets would result in no funds being) available for the satisfaction of the Claims of all creditors whoseclaims are estimated to equal $9,559,153.25, which would result in an _0_% distribution to Unsecured Creditors.

## B.    The Plan Satisfies the "Best Interest of Creditors Test" and is"Fair and Equitable"

This Plan provides for a comprehensive reorganization of the Debtor to preserve its going concern value and future business. Subchapter V contemplates under 1191(c) of the Bankruptcy Code that the Debtor's Plan provides a payout to creditors of all of the Debtor's disposable income over a three (3) year period, which the Court can increase for cause shown up to five (5) years ("Disposable Income").

Based upon the analysis prepared by the Debtor with the assistance of its counsel, the Debtor's projected Disposable Income post Effective Date over a three (3) year period is approximately $450,000.00.

Sections 1191(c)(2)(A) and (B) of the Bankruptcy Code allow the Debtor to make distributions over a period of three (3) years, which the Court may increase to no more than five (5) years for cause shown under a plan.

Under the Bankruptcy Code, the Debtor can confirm its Plan in one of two ways: (i) on a consensual basis under Sections 1191(a) and 1129(a) of the BankruptcyCode—this requires that the unsecured creditors in Class 2 vote in favor of the Planby at least 2/3 in dollar amount and

more than 1/2 in number of the Allowed Claims in the Class, or (ii) on a non-consensual basis under Section 1191(b) of the Bankruptcy Code—under this section the Plan would be confirmed under the "cram down" provisions of the Bankruptcy Code.

In the event that the Plan is confirmed consensually, the Plan is a "pot plan," meaning that funds from the Disposable Income of the Post Confirmation Debtor for the three (3) years after Confirmation, will be available to Holders of General Unsecured Claims, each of whom will receive a pro rata distribution from the "pot" that is estimated to be approximately %. The exact amount will depend primarily on the Claims Resolution process.

In the event the Plan is not consensual the Sub Chapter V Trustee will remain in control of the Debtor's Distribution for three (3) years and the costs of the Sub chapter V Trustee will be costs of the Estate and will reduce the distribution to Allowed Unsecured Claims. This will result in an approximate distribution on account of Allowed General Unsecured Claims of % for the reason explained above.

In either case, this will enable the Debtor to satisfy the requirement of Section 1129(a)(7) of the Bankruptcy Code because holders of Allowed General Unsecured Claims who comprise one of the other Impaired Classes of creditors, will receive an amount materially greater than the amount these creditors would be expected to receive in a hypothetical Chapter 7 liquidation.

## C.    The Plan is Feasible and the Debtor Will be Able to Make All Distributions Under the Plan

Sections 1191(c)(3)(A)(i) and (ii) of the Bankruptcy Code require that the Debtor "be able to make all payments under the plan; or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan." The Debtor's Plan satisfies these requirements.

In order to make the distributions proposed under the Plan, the Debtor   ceased offering certain services, such as housing and lodging, and operating a kitchen and bar with staff and conducting catering for outside groups. Under the Debtor's new business model, it will save operating expenses and use its membership fees to pay its ongoing expenses and fees, including its rent under the revised lease for 60 Pine Street toward the plan.  All initiation fees will be dedicated to funding the Plan for three (3) years following the Effective Date: (i) pay all of its Administrative and Priority Claims in full on the Effective Date of the Plan and (ii)  pay Allowed Priority Tax Claims  pursuant to the time permitted  in 11 U.S.C. §507 (a)(8) together with statutory Interest, (iii) pay other Priority Claims pursuant to the CBA Settlement and (iv) make a distributions to each of its Allowed General Unsecured Creditors at the conclusion of the Claims Reconciliation Process over three years with quarterly distributions of its disposable income.in the estimated approximate amount of .0025% of each Allowed General Unsecured Creditor's Claim

The categories of Claims and Interests listed below classify Claims for all purposes, including voting, confirmation, and Distribution under this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY**

**PROCEDURE 3019 AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

**IV.**

**TREATMENT OF UNCLASSIFIED CLAIMS**

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, Priority Tax Claims, and Professional Fee Claims are unclassified claims, not considered Impaired and not entitled to vote on the Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. Treatment of these claims is provided below.

**A.    Administrative Claims**. Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtor or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of the Allowed Administrative Claim, be paid the full, or as otherwise agreed,  unpaid amount of such Allowed Administrative Claim in Cash within fourteen days of the Effective Date, *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of  business shall be paid in the ordinary course of business in accordance  with applicable terms and conditions without further notice to or order of the Bankruptcy All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

**Estimated Amount of Administrative Claims: $  25,000.00**

**B.    Professional Fee Claims**. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the holder of the Professional Fee Claim and the Debtor or Reorganized Debtor agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

**Estimated Amount of Priority Tax Claims:**

**Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code, with payments over five (5) years with statutory interest. However, the Debtor does not believe that it has any valid Priority Tax Claims and will be objecting to the two filed Tax Claims.

**CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

**A.    Classification and Treatment Generally**. Pursuant to sections 1122, 1123, and

1190 of the Bankruptcy Code, set forth below is a designation of Classes ofClaims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receivingdistributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth inArticle IV.

B.    **Classification and Treatment of Classified Claims and Interests.**

Classified Claims and Interests are divided into numbered classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| Class 1 –Priority Claim of the Union Claims | Impaired | Yes |
| Class 2 – General Unsecured Claims | Impaired | Yes |
| | | |

The Distributions under the Plan are as follows:

| Claim # | Creditor | Amount Claimed | Priority Claimed | Debtor's Proposed Treatment |
|---|---|---|---|---|
| 1 | IRS | $24,270.00 | $11,250 | Object to in its entirety |
| 2 | NYC Dept Fin | $458,777.96 | $458,777.96 | Object to its entirety. |
| 3 | Wells Fargo | $150,290.42 | | Allow |
| 4 | Club Employee Pension | $81,319.54 | | Allow as per settlement. |
| 5 | Club Employee Pension | $452,359.00 | | Allow as per settlement. |
| 6 | Hotel Rest & Club Employees Union | $224,051.75 | $108,192.71 | Allow as $224,051.75 unsecured claim, Allow priority claim as per settlement. |
| 7 | Pitney Bowes | $2,426.48 | | Allow |
| 8 | Pitney Bowes | $4,975.24 | | Allow |
| 9 | Carter Ledyard & Milburn | $7,323.82 | | Allow |
| 10 | Great [Golden] Empire Realty | $6,060,297.00 | | Allow |
| 11 | EBRA | $18,756,726.89 | | Allow in the amount of not more than $2,551,840.00 |
| 12 | Angel Matias | $0.00 | | Disallow |
| | | | | |
| | TOTAL | $26,222,818.10 | $578,220.67 | |

1.      Class 1: Priority Non-Tax Claims

    a.      *Treatment*:  Pursuant to the CBA Settlement with the Union this Claim shall be paid in equal quarterly installments of $18,670.98 for three (3) years from the Effective date commencing on the Distribution Date.

    b.      *Impairment and Voting*: <u>Class 1 is Impaired and is entitled to Vote on the Plan</u>.

2.      Class 2: General Unsecured Claims

    a.      *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder shall, in exchange for full and final satisfaction, settlement, and release of such Claim, receive its *pro rata* portion of the Class 2 Distribution Amount in Twelve (12) quarterly payments consisting of all of the Disposable Income from the Debtor's Initiation Fees from the preceding quarter,  as soon as reasonably practicable after the Debtor has concluded the Claims Reconciliation Process. Upon payment of the entire Class 2 Distribution Amount, all obligations to Class 2 General Unsecured Creditors under this Plan are fully satisfied. Claims receiving Distributions of less than one Dollar shall not receive a Distribution.

    b.      *Impairment and Voting*: Class 2 is Impaired and all Holders of Class 2 Claims are entitled to vote on the Plan.

**VI.**

**<u>ACCEPTANCE OR REJECTION OF THE PLAN</u>**

A Class shall have accepted the Plan if it is accepted by at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims in such Class (excluding Insiders) that have cast ballots with respect to the Plan. Only those votes cast by holders of Allowed Claims shall be counted in determining whether acceptances have been received in sufficient number and amount to obtain confirmation.

Classes 1 and 2 are impaired and entitled to vote.

**VII.**

**<u>MEANS OF IMPLEMENTATION</u>**

**A.      Plan Funding.** All distributions under this Plan will be provided by the Debtor's future Membership fees and Members' dues.

**B.      Continued Reorganized Operations.** The Reorganized Debtor will continue to operate with the primary purpose of continuing to conduct the Debtor's business through the modified lease at 60 Pine Street. The Successor Lease which was to succeed the initial Lease after

certain upgrades to the Clubhouse at 60 Pine Street will be amended to reflect changes negotiated between Landlord and the agents for the Landlord and the DTA. All other terms will remain in place. The key amendments proposed are as follows:

1. All dues paid by DTA members will be paid to Landlord or Landlord's Agents monthly as Rent.
2. Minimum Rent will be $500,000.
3. Minimum Rent will increase in line with existing lease terms or by the increases in dues paid annually, whichever is greater.
4. Minimum Rent in 2026 will be $1 million.
5. Landlord or Landlord's Agents will provide all services required to operate a club in the building from Rent. The DTA shall not provide any of those services.  These will be determined annually in a separate operating agreement.
6. Operating Agreement will determine pricing and billing of any consumption items by the members of the DTA.
7. Landlord or Landlord's Agents will cover all insurance required of the DTA under the lease from Rent.
8. The cost of any services or insurance which Landlord or Landlord's Agents do not want to provide at any time will be deducted from Rent owed to Landlord and paid directly by the DTA.
9. Assuming minimum rent is paid in 2026 and all other lease terms are met, the lease term will automatically be extended in line with the existing lease terms.
10. The Debtor shall relocate to the 60 Pine location as soon as the HVAC repairs are completed, which is projected to be on or about October 1, 2021.

**C.    Plan Distributions.**  All payments to Allowed Claims shall be made from the disposable income from all initiation fees paid by new members.  Those projections are annexed hereto as Exhibit "B".

**D.    Corporate Governance.** The Reorganized Debtor will continue to be governed by its board of trustees, and the President Mark R. Altherr. On the Effective Date, the Debtor's directors and officers shall remain the directors and officers of the Reorganized Debtor.

**E.    Section 1145 Exemption.** In accordance with section 1145 of the Bankruptcy Code, the retention under the Plan of the Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

**VIII.**

**<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.** Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective

Date; or (3) is the subjectof a motion to reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts, orconditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable.

**B.     Insurance Policies**. Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Reorganized Debtor if necessary to continue the Insurance Policies in full force) all ofthe Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Insurance Policies.

**C.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Plan, each Executory Contractor Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any,including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreementshas been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of theExecutory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**D.     Contracts and Leases Entered Into After the Petition Date.**Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

**E.     General Reservation of Rights**. Nothing contained in the Plan shallconstitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor, or any of itsaffiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

**IX.**

## DISTRIBUTIONS

**A.     Reorganized     Debtor     to     Make     Distributions.**     Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all payments required by this Plan.

**B.     Method of Payment; Payments, Filings, and Notices Only on Business Days**. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**C.     Undeliverable or Unclaimed Distributions**. Payments required by this Plan, if made by check, shall be mailed to the address set forth in any proof of claim, to the address set forth in any written notice of address change filed with the Bankruptcy Court or provided to the Debtor or its counsel, or to the address set forth in the Debtor's schedules if no proof of claim has been filed and no written notice of address change has been filed or provided. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery within 60 days of the later of (a) the Effective Date and (b) the date of the initial attempted distribution. If such Holder provides the requisite notification, the Reorganized Debtor will, within 30 days of receipt of such information, deliver such undeliverable distribution to the Holder. If such Holder fails to provide information within the 60 day period, such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revert to the Reorganized Debtor. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a Final Decree or closure of the Chapter 11 Case.

**D.     Time Bar to Cash Payments**. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

**E.     Setoff and Recoupment**. From and after the Effective Date, the Reorganized Debtor may, to the extent permitted by section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Rights of Action of any nature whatsoever that the Reorganized Debtor may have against the Holder of such Claim; *provided*, *however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor of any other Cause of Action.

**F.     No Interest**. No interest shall accrue or be paid on any Claim.

**G.     Disputed Claims**. No payment will be made on account of a Disputed Claim unless such claim has been Allowed by final non-appealable order or resolved as provided below. Unless another time is set by order of the Bankruptcy Court, the Reorganized Debtor shall have until the Claim Objection Deadline to file objections to any Disputed Claim. The Claim Objection Deadline may be extended on motion of the Reorganized Debtor for cause, or on consent. For the avoidance of doubt, the Reorganized Debtor shall have the authority to settle and resolve any Disputed Claim on such terms as it deems appropriate without the need for Bankruptcy Court approval.

**H.     Withholding Taxes**. The Reorganized Debtor shall be entitled to deduct any federal, state, or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Reorganized Debtor may require that the holder of an Allowed Claim provide its taxpayer identification number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information, or certification within 60 days from the date notification of the need for such information is sent to the Holder, such Holder's distribution will be treated as unclaimed property in accordance with Article IX herein, or the amount required to be withheld may be so withheld and turned over to the applicable authority.

**X.**

## <u>ALLOWANCE OF CLAIMS AND INTERESTS</u>

**A.     Disallowance of Claims.** Pursuant to Bankruptcy Code §§ 105 and 502(d), no distributions will be made with respect to Claims that are Disputed or to Claimants from which property is recoverable under Bankruptcy Code §§ 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) (including the Avoidance Actions) until such time as such objection or Rights of Action against that Claimant have been settled or resolved by a Final Order and all sums due to the Debtor are turned over to the Reorganized Debtor. As soon as practicable after the date on which a Claim that is Disputed becomes Allowed, the holder of such newly Allowed Claim will receive all distributions to which it is entitled under the Plan.

**B.     No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Any person who holds both an Allowed Claim and a Claim that is Disputed will receive the appropriate distribution on the Allowed Claim, but will not receive a distribution on the Claim that is Disputed.

**C.     Allowance of Claims**. Except as expressly provided for in the Plan, no Claim shall be deemed Allowed by virtue of the Plan, Confirmation Order, or any order of the Bankruptcy Court in this Chapter 11 Case, unless and until such Claim is Allowed.

**D.     Late Claims**. Any Claim filed after any applicable Bar Date shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim by the Bankruptcy Court, and such entity shall not be treated as a creditor or Claimant for the purposes of voting or distributions with respect to the Plan. Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed

Disallowed and expunged and the Claimant shall receive no distribution under the Plan or from the Debtor or Reorganized Debtor.

**E.    Estimation of Claims.** The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated General Unsecured Claim pursuant to Bankruptcy Code § 502(c) regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.

**F.    Cumulative Remedies**. All of the aforementioned Claim's objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved as provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes Allowed, such Claim shall be treated as Disputed for purposes related to allocations and distributions.

**XI.**

**EFFECT OF THE PLAN ON CLAIMS,
INTERESTS, AND CAUSES OF ACTION**

**A.    Binding Effect**. On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

**B.    Vesting of Assets**. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Rights of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Rights of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**C.    Authority to Effectuate Plan**. Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the Plan, to consummate any transaction provided for herein, and to

effectuate the distributions provided for hereunder.

    **D.**    **Discharge**. In the event this Plan is confirmed under Bankruptcy Code § 1191(a), as of the Effective Date the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt imposed by this Plan.

    In the event this Plan is confirmed under section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan unless the Bankruptcy Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in Bankruptcy Code § 1192.

**XII.**

**EXCULPATION, INJUNCTION, AND RELATED PROVISIONS**

    **A.**    **Exculpation**. The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any claims arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law, Bankruptcy Court order, or rules protecting such Persons from liability.

**Injunction. Generally**, except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article V of the Plan or that is subject to a distribution under the Plan, , are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

    **Nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Right of Action; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.**

    **Following the Effective Date, these injunctions shall remain permanently in full force and effect.**

**B.      Preservation and Application of Insurance**. The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of anyinsurance policies (and any agreements, documents, or instruments relating thereto)that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

**C.      Retention, Reservation, and Prosecution of Rights of Action**. Except as otherwise provided in the Plan, all Rights of Action are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Rights of Action. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Rights of Action, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Rights of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, cause, or Right of Action,the Reorganized Debtor shall be entitled to the extensions provided under section 108of the Bankruptcy Code. Except as otherwise provided in the Plan, all Rights of Actionshall survive confirmation and the commencement or prosecution of Rights of Actionshall not be barred or limited by any estoppel, whether judicial, equitable, orotherwise.

# XIII.

## CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE

**A.      Conditions to Effectiveness**. The Effective Date does not occur unlessand until:

1.      The CBA Settlement has been approved by the Court.

2.      The Confirmation Date occurs and the Confirmation Order has been entered and, if appealed, has not been stayed.

3.      All instruments and agreements to be issued, entered into, delivered, orfiled under the Plan are issued, entered into, delivered, or filed and areeffective.

**B.      Waiver of Conditions**. The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, anorder of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

**C.      Effect of Non-Occurrence of the Effective Date**. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Planshall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtor unless contained in a prior Order of this Court. In the event that one or more of the conditions specified in herein shall not have occurredor otherwise not have been waived, (a) the Confirmation Order shall be vacated, (b) the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as thoughthe Confirmation Order were never entered, and (c) the Debtor's obligations with respect to Claims  shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any

Claims by or against the Debtor or any other Person or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

# XIV.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to this Chapter 11 Case and the Plan, including jurisdiction to:

**A.** Resolve any matters related to Executory Contracts, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contractor lease is or was executory or expired;

**B.** Adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

**C.** Ensure that distributions to Holders of Allowed Claims are accomplished as provided under this Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

**D.** Hear and determine or resolve any and all matters related to Rights of Action;

**E.** Enter and implement any orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

**F.** Issue and implement orders in aid of execution, implementation, or consummation of this Plan and all contracts, instruments, releases, transactions, and other agreements or documents created in connection with the Plan to the extent authorized by Bankruptcy Code § 1142, including, but not limited to, orders interpreting, enforcing, or clarifying the provisions thereof;

**G.** Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

**H.** Hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all

matters related to sections 1192 and/or 1141 of the Bankruptcy Code;

**I.**     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

**J.**     Hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

**K.**     Hear and determine any timely objections to Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of, or secured or unsecured status of any Claim, in whole or in part;

**L.**     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**M.**     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or enforcement of the Plan;

**N.**     Enforce all orders, judgments, and rulings entered in connection with the Chapter 11 Case and to determine any other matters that may arise in connection with or are related to the Plan and the Confirmation Order;

**O.**     Enforce the permanent injunction created by the Confirmation Order and Article XII hereof.

**P.**     Hear any other matter not inconsistent with the Bankruptcy Code;

**R.**     Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

**S.**     Issue a final decree and enter an order closing the Chapter 11 Case; and

**T.**     Enforce all orders previously entered by the Bankruptcy Court.

**U.**     Nothing contained in this Article shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

## XV.

## <u>MISCELLANEOUS</u>

**A.     Effecting Documents; Further Transactions; Timing**. The Debtor and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the

Bankruptcy Court, to execute, deliver, file, or record all contracts,instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

  **B.**  **Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

  **C.**  **Continuing Viability of Other Orders/Agreements**. Except to the extent expressly modified by the Plan, all Final Orders previously entered by the Bankruptcy Court shall continue in full force and effect.

  **D.**  **Exemption from Transfer Taxes**. Under Bankruptcy Code § 1146(a):

(a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the ConfirmationOrder, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax,mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without thepayment of any such tax or assessment.

  **E.**  **Post-Effective Date Fees; Final Decree**. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Reorganized Debtor is responsible for paying any post- Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reportsuntil the Bankruptcy Court enters a final decree, which Reorganized Debtor must seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

  **F.**  **Modification and Amendments**. The Debtor may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, theDebtor may under section 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

  **G.**  **Revocation, Withdrawal, or Non-Consummation**. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's filing of a noticethereof, and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shallbe deemed to constitute a waiver or release of any Rights of Action

or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

      **H.**    **Exhibits/Schedules**. All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein. In the event of any inconsistency between the Plan and the exhibits and schedules to the Plan or the Plan Supplement, the terms of the Plan shall control.

      **I.**    **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code

      **J.**    **Notices**. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

          *If to the Reorganized Debtor:*

          Down Town Association
          Attn: Mark R. Altherr,
          60 Pine Street
          New York, New York 10005

          With a copy (which shall not constitute notice) to:

          Avrum J. Rosen, Esq.
          Nico G. Pizzo, Esq.
          Law Offices of Avrum J. Rosen, PLLC
          38 New Street
          Huntington, New York 11743
          T: 631-423-8527
          arosen@ajrlawny.com
          npizzo@ajrlawny.com

          *If to the U.S. Trustee:*

          Office of the United States Trustee for the Southern District of New York
          U.S. Federal Office Building 201
          Varick Street, Suite 1006 New
          York, NY 10014
          T: 212-510-0500
          F: 212-668-2256
          Attn: Brian Masumoto, Esq.

*If to the Subchapter V Trustee:*

Nat Wasserstein, Esq.
Lindenwood Associates, LLC
328 N Broadway
Nyack, NY 10960
T: 845-398-9825
nat@lindenwoodassociates.com

**K.    Entire Agreement**. Except as otherwise indicated, the Plan supersedesall previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have becomemerged and integrated into the Plan.

**L.    Severability**. If, prior to the Confirmation Date, any term or provisionof the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, theBankruptcy Court shall have the power to alter and interpret such term or provisionto make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable,and such term or provision shall then be applicable as altered or interpreted.Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no waybe affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

[*Remainder of Page Intentionally Left Blank*]

**M.    Conflicts**. Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; **provided, however**, that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

Dated: June 2, 2021
     New York, New York

Respectfully Submitted

Down Town Association

By:   */s/Marl Altherr_____*
      Mark Altherr, President


Dated: June 2, 2021
     Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**
*Counsel for the Debtor and*
*Debtor-in-Possession*

By:   */s/ Avrum J. Rosen*
     Avrum J. Rosen, Esq.
     Nico G. Pizzo, Esq.
     38 New Street
     Huntington, New York 11743
     (631) 423-8527
     arosen@ajrlawny.com
     npizzo@ajrlawny.com

**EXHIBIT  A**

**LIQUIDATION ANALYSIS**

EXHIBIT A

**Down Town Association d/b/a The Down Town Association**
*LIQUIDATION ANALYSIS*
Projected as of 6/2/21

| | Estimated Liquidation % | Book Value | Estimated Liquidation Value |
|---|---|---|---|
| Cash | 100% | 64,859 | 64,859 |
| Receivables | 40% | 10.000 | 2,000 |
| Furniture and paintings | | | 40,000 |
| **Estimated Proceeds from Liquidation of Assets** | | **74,859** | **610,859** |
| Chapter 11 Professional Fees & Trustee | 100% | | 25,000.00 |
| Chapter & Administrative  Fees | | | 10,000 |
| **Net Proceeds Available after Administrative Claims** | | | **71,859** |
| Other Priority Claims | | | 108,192.71 |
| Priority Tax Claims | | - | 11,250 |
| **Net Proceeds Available to Unsecured Creditors** | | | **(47,583.71)** |

General- Liquidation analysis is projected as of June 2, 2021, when applicable. All other balances are asof March 4, 2021.

A.  Cash and Cash Equivalents - The cash balances are projected balances as of  3/6/2021.

B.  Accounts Receivable - Represents 2021 membership fees and is estimated to be 20% collectable as over 50% of AR is over 120 days past due.

# EXHIBIT

# "B"

Table 1

| Classification | Initiation Fee | New Member Est. | Initiation Fees | New Member Est. | Initiation Fees | New Member Est. | Initiation Fees |
|---|---|---|---|---|---|---|---|
| Resident | | 2022 | | 2023 | | 2024 | |
| Regular | $3500.00 | 20 | $70,000.00 | 35 | $122,500.00 | 50 | $175,000.00 |
| 30-35 | $1900.00 | 4 | $7,600.00 | 7 | $13,300.00 | 10 | $19,000.00 |
| 26-29 | $950.00 | 2 | $1,900.00 | 3 | $2,850.00 | 5 | $4,750.00 |
| 21-25 | $600.00 | 2 | $1,200.00 | 2 | $1,200.00 | 3 | $1,800.00 |
| 70 and older | 0 | 0 | 0 | | | | |
| | | | | | | | |
| Non Resident | | | | | | | |
| Regular | $1800.00 | 2 | $3,600.00 | 5 | $9,000.00 | 8 | $14,400.00 |
| 26-35 | $950.00 | 0 | $0.00 | 1 | $950.00 | 2 | $1,900.00 |
| 21-25 | $600.00 | 0 | 0 | 1 | $600.00 | 2 | $1,200.00 |
| 70 and older | 0 | 0 | 0 | 2 | | 3 | |
| | | | | | | | |
| | | | $84,300.00 | | $150,400.00 | | $218,050.00 |